# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-2934

_____

United States of America,

Appellee,

v.

Yesenia Sanchez,

Appellant.

_____

No. 08-2951

_____

United States of America,

Appellee,

v.

Agustin Morales-Mata, also known as
Marco Mendez,

Appellant.

\* \* \* \* \* \* \* \* \*

\* \* \* \* \* \* \* \* \* \* \* \*

Appeals from the United States
District Court for the
District of Nebraska.

_____

Submitted: March 13, 2009
Filed: July 13, 2009

_____

Before WOLLMAN, RILEY, and COLLOTON, Circuit Judges.
_____

COLLOTON, Circuit Judge.

After they were charged with conspiracy to distribute cocaine, Yesenia Sanchez and Agustin Morales-Mata moved to suppress evidence that was seized during a search of a vehicle in which they were traveling. The motions argued that the state trooper who stopped the vehicle lacked adequate justification under the Fourth Amendment for his action. The district court[1] denied the motions, and Sanchez and Morales-Mata entered conditional guilty pleas. After sentencing, they appeal the denial of their motions to suppress, and we affirm.

I.

On November 19, 2007, Trooper David Frye was on patrol traveling westbound on Interstate 80 near Lincoln, Nebraska. At approximately 12:15 p.m., Frye noticed a white Ford minivan, heading in the opposite direction, without a front license plate. After the minivan passed him on the highway, Frye saw that it was not displaying a rear license plate either. He did observe, however, a piece of paper affixed to the minivan where a rear license plate would have been displayed.

Frye pursued the minivan, and as he approached the minivan from the rear, he was able to get a better look at the piece of paper. The paper, which was about the size of an actual license plate, had three lines of large, boldface text. The first stated "2000 FORD"; the second, "12-25-07"; and the third, "190167S." At the bottom of the paper, in much smaller type, were the words "Arizona Temporary Registration

_____

[1]The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska, adopting the report and recommendation of the Honorable David L. Piester, United States Magistrate Judge for the District of Nebraska.

-2-

Plate." From his vantage point, however, Frye could not read the words "Arizona Temporary Registration Plate" or otherwise discern the name of any issuing State. Suspecting that the paper was not an official document, he decided to stop the minivan to investigate.

The minivan stopped, and Frye left his patrol car and began walking toward it. He also bent down to examine briefly the paper taped to the back of the minivan. He still did not see the words "Arizona Temporary Registration Plate" or the name of any State that may have issued the paper.

Frye approached the front passenger-side window to speak to the minivan's occupants. Inside were the driver (Morales-Mata) and three passengers – Sanchez, an infant, and a 14-year-old girl. Frye saw an air freshener in the shape of a pine tree hanging from the minivan's rearview mirror. He asked to see paperwork for the vehicle, and the occupants produced an Arizona vehicle title and an Arizona temporary vehicle registration certificate. Although Morales-Mata claimed to be the owner of the vehicle, the title and registration were not in his name.

Frye asked Morales-Mata to exit the minivan and accompany him back to his patrol car. On the way, Frye looked at the undercarriage of the minivan and noticed fresh undercoating spray. He knew from experience that such spray is commonly used to conceal compartments in a vehicle's undercarriage for transporting illegal drugs.

Inside the patrol car, Frye issued a written warning for operating a vehicle with an object (the air freshener) obstructing the view through the windshield. *See* Neb. Rev. Stat. § 60-6,256. Frye also advised Morales-Mata that the paperwork for the vehicle should be in his name. Frye then stated that the traffic stop was over. As Morales-Mata opened the door of the patrol car to leave, however, Frye asked if he could speak further with Morales-Mata. Morales-Mata closed the car door, and Frye

-3-

asked if there were any guns in the minivan. Morales-Mata said that there were not, and told Frye that he could search the vehicle to check. Frye gave Sanchez and Morales-Mata consent-to-search forms, which they read and signed. Along with two other troopers who had arrived on the scene, Frye conducted a search of the minivan, and found cocaine in a hidden compartment in the minivan's undercarriage.

Sanchez and Morales-Mata were arrested and charged with conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. Both defendants moved to suppress the evidence obtained from the search of the vehicle. They argued that the piece of paper taped to the back of the minivan was a valid Arizona temporary registration plate, and that because it was clearly visible from the outside of the minivan, Frye should have recognized that it was an official document. Accordingly, Sanchez and Morales-Mata urged that Frye's decision to stop the minivan was not supported by reasonable suspicion or probable cause. On that basis, they argued that the stop violated the Fourth Amendment, and that the evidence obtained from the search should be suppressed as the fruit of the violation.

The magistrate judge recommended that the motions be denied, and the district court adopted the recommendation. The court acknowledged that the words "Arizona Temporary Registration Plate" appeared at the bottom of the paper taped to the back of the minivan, but determined that "these words could not be read by an officer observing the vehicle as it traveled on the roadway." The court found that the words were "so small that even upon bending and looking at the paper at the time of the traffic stop, an officer could not reasonably be expected to read [them] from a distance beyond two feet." Thus, the district court reasoned, "[e]ven if the court assumes the defendants' vehicle was properly tagged under Arizona law," Frye had an "objectively reasonable" basis to believe that the vehicle was "failing to display visible evidence that the vehicle was properly registered." The court concluded that there was probable

cause to stop the vehicle, and the seizure therefore complied with the Fourth Amendment.

Sanchez and Morales-Mata entered conditional pleas of guilty, reserving the right to appeal the denial of their motions to suppress. The district court sentenced them to 74 and 87 months' imprisonment, respectively. On appeal, Sanchez and Morales-Mata argue that Frye's seizure of the minivan violated the Fourth Amendment, and that the evidence obtained from the subsequent search should therefore be suppressed. We review the district court's legal conclusion *de novo*. *Ornelas v. United States*, 517 U.S. 690, 699 (1996).

II.

The Fourth Amendment prohibits "unreasonable searches and seizures." A traffic stop constitutes a seizure of the vehicle's occupants, including any passengers. *Brendlin v. California*, 551 U.S. 249, 255-57 (2007). To be reasonable, the stop must be supported by at least "reasonable suspicion to believe that criminal activity may be afoot." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (internal quotations omitted). We hold that Frye's decision to stop the minivan was consistent with the Fourth Amendment, because it was supported by reasonable suspicion to believe that the operator of the minivan violated Nebraska's vehicle registration statutes.

The general rule in Nebraska is that vehicles must display two license plates, one in the front and one in the rear. Neb. Rev. Stat. §§ 60-399(1), 60-3,100. Nebraska makes exception, however, for vehicles recently purchased in Nebraska, which may instead display two temporary, "In Transit" stickers. *Id.* § 60-376. It also makes exception for out-of-state vehicles, which need display only what is required by the jurisdiction in which they are registered. *Id.* §§ 60-366(2), 60-367.

Frye knew that the minivan was not displaying any license plates. He also knew that the paper taped to the rear of the minivan was not a Nebraska "In Transit" sticker. Sanchez and Morales-Mata contend, however, that Frye should have realized that the paper was valid proof of temporary registration in Arizona, and that the operator was in compliance with Nebraska law.

Even assuming that the minivan properly displayed Arizona registration the state trooper's seizure of the vehicle did not violate the Fourth Amendment. "The determination of whether probable cause existed is not to be made with the vision of hindsight, but instead by looking to what the officer reasonably knew at the time," *United States v. Sanders*, 196 F.3d 910, 913 (8th Cir. 1999), and the same is true for reasonable suspicion. Here, it was objectively reasonable for Frye to suspect at the time of the stop that the paper affixed to the rear of the minivan was not an official registration document from another State. As he approached the minivan from behind, Frye could not see the name of any State printed on the paper. Although the words "Arizona Temporary Registration Plate" appeared at the bottom of the paper, the district court did not clearly err in finding that those words were too small to be read by a trooper observing the minivan on the highway. It was objectively reasonable for Frye to expect that the name of the issuing jurisdiction would appear conspicuously on the face of an official document, and to investigate further if a name was not visible. We therefore conclude that Frye had reasonable suspicion to believe that the minivan did not display valid proof of vehicle registration, as required by Nebraska law.

We reached a similar conclusion in *United States v. Smart*, 393 F.3d 767 (8th Cir. 2005). In that case, a police officer in Iowa noticed an oncoming car with no license plate in the front. *Id.* at 769. While pursuing the car, the officer observed a license plate in the rear, but could not determine which State had issued it. The officer decided to stop the car, because Iowa law requires the display of two license plates, unless the vehicle is registered in a jurisdiction that requires the display of only one.

As the officer walked toward the car, he was able to determine that its rear plate had been issued by the State of Georgia. *Id.* Because Georgia requires the display of only one plate, the absence of a plate in the front was not a violation of Iowa law. We nevertheless held that the officer's initial "observations, although incomplete, were sufficient to give rise to a reasonable suspicion that [the] vehicle was in violation of Iowa's license-plate requirements." *Id.* at 770-71.

Like the officer in *Smart*, Frye stopped a vehicle based on imperfect information, but acted reasonably in doing so. Without an opportunity to inspect the paper closely, Frye could not eliminate the possibility that the minivan did actually display valid proof of out-of-state registration. "A determination that reasonable suspicion exists, however, need not rule out the possibility of innocent conduct." *Arvizu*, 534 U.S. at 277. It was enough in *Smart* that the officer, having taken reasonable measures to observe the vehicle from his vantage point, could not determine which State had issued the car's rear license plate. Likewise here, Frye reasonably investigated the minivan by approaching it from behind, but because the printing on the paper affixed to the rear was too small to read in its entirety, and no issuing jurisdiction was identifiable, he reasonably suspected that the paper was not an official document that complied with the licensing requirements of another State.

Because the stop of the minivan did not violate the Fourth Amendment, the evidence obtained from the subsequent search of the minivan was not the fruit of a constitutional violation. Accordingly, the judgment of the district court is affirmed.

_____