# United States Court of Appeals

## For the Eighth Circuit

_____

No. 12-2050

_____

United States of America

*Plaintiff - Appellee*

v.

Wayne E. Gordon

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: September 27, 2013
Filed: December 23, 2013

_____

Before MURPHY, MELLOY, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Wayne E. Gordon was indicted for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Gordon entered a conditional guilty plea after the district court[1] denied his motion to suppress the firearm recovered from his vehicle

_____

[1]The Honorable Ortrie D. Smith, United States District Judge for the Western District of Missouri.

during a traffic stop. Gordon appeals the denial of his motion to suppress, arguing that the stop and subsequent discovery of the firearm violated his Fourth Amendment rights. We affirm.

I.

On January 31, 2009, at approximately 1:39 a.m., Kansas City, Missouri Police Officer Michael Helvie looked through his rear-view mirror and observed a white SUV speeding two blocks away. During his attempt to catch the vehicle, Officer Helvie estimated that the SUV reached speeds ranging from 60 to 80 miles per hour in a 25 miles-per-hour speed zone. He eventually lost sight of the SUV but reported his observation to the dispatcher. Within the next minute, Officer Helvie spotted the SUV again and noticed distinctive characteristics of the vehicle, leading him to believe the SUV was a 2005 or newer Ford Expedition. Officer Helvie reported the description to the dispatcher and requested the assistance of the helicopter unit.

At approximately 1:48 a.m., Officer Helvie caught sight of what appeared to be the Expedition speeding over the Troost Street overpass. Officer Helvie alerted the helicopter unit that the Expedition was southbound at 89th and Troost. A few minutes later, another officer spotted the Expedition on Troost and notified Officer Helvie. Officer Helvie relayed the information to the helicopter unit, and within the next minute, the helicopter unit spotted the Expedition speeding near the reported location. At that point, all officers had been authorized to initiate full pursuit of the Expedition.

The helicopter unit continued to follow the vehicle until it was stopped by Officer Wesley Lambright, who had heard the radio broadcast of the pursuit and observed the helicopter unit's spotlight on the Expedition. Officer Lambright ordered Gordon to exit the vehicle. Gordon complied, leaving the driver's door open upon his exit. Officer Lambright then placed Gordon in handcuffs. When Officer Helvie

-2-

arrived at the scene, he confirmed that the Expedition was the same one he had observed speeding earlier. Officer Helvie arrested Gordon for careless driving and placed him in a patrol car.

After the arrest, Officer David Ferber and the canine unit arrived on the scene, and Officer Helvie requested that Officer Ferber conduct a canine search of the vehicle. Officer Ferber walked the dog around the Expedition, opened the passenger's door, and guided the dog inside. The dog seemed interested in the dashboard but did not alert on any contraband. Officer Ferber, however, looked under the driver's seat and saw a gun. He immediately notified Officer Helvie. Officer Helvie went to the driver's side of the Expedition and observed a black, semi-automatic handgun under the driver's seat. Officer Helvie testified that the driver's door had remained open since Gordon's exit and that he observed the gun from outside the vehicle. After seizing the gun, Officer Helvie contacted the Robbery Division to obtain Gordon's criminal history and was informed that Gordon was a convicted felon. Officer Helvie then placed Gordon on investigative hold for being a felon in possession of a firearm.

Gordon was subsequently indicted for being a felon in possession of a firearm. Gordon filed a motion to suppress evidence of the firearm on the grounds that both the stop and the search of the vehicle were unlawful. A magistrate judge[2] conducted a hearing on the motion and recommended that the motion be denied.[3]

---

[2]The Honorable Robert E. Larsen, United States Magistrate Judge for the Western District of Missouri.

[3]Initially, Gordon did not seek de novo review of the report nor did the district court adopt the report. Gordon, nonetheless, appealed the magistrate judge's recommendation to the Eighth Circuit, and we remanded the case to allow the district court to issue an order on the motion.

After a de novo review, the district court adopted the magistrate judge's report and recommendation and denied Gordon's motion to suppress. The district court found that: (1) the stop was lawful based on the combination of Officer Helvie's observations, the amount of time that had passed, and the lack of other vehicles in the vicinity matching Helvie's initial description; (2) the helicopter unit's continued observation of the speeding SUV established probable cause for the stop and the subsequent arrest for careless driving; (3) Officer Helvie's seizure of the gun was proper on the basis that it was in plain view; (4) in the alternative, the discovery of the gun was authorized under the search-incident-to-arrest and inventory-search exceptions to the warrant requirement; and (5) because permitting the dog inside the car did not result in the discovery of the firearm, the use of the dog is irrelevant to Gordon's motion.

Gordon entered a conditional guilty plea to the indictment, reserving his right to appeal the denial of his motion to suppress. Gordon was sentenced to 37 months imprisonment. This appeal followed.

II.

"In an appeal from a district court's denial of a motion to suppress evidence, this court reviews factual findings for clear error, and questions of constitutional law *de novo*." United States v. Hollins, 685 F.3d 703, 705 (8th Cir. 2012). "Guided by this standard, we must affirm the district court's decision on a suppression motion 'unless it is not supported by substantial evidence on the record; it reflects an erroneous view of the applicable law; or upon review of the entire record, [we are] left with the definite and firm conviction that a mistake has been made.'" United States v. Janis, 387 F.3d 682, 686 (8th Cir. 2004) (quoting United States v. Perez-Perez, 337 F.3d 990, 994 (8th Cir. 2003)).

Gordon argues two points on appeal: (1) the stop of his vehicle was unlawful because the Government lacked reasonable suspicion that Gordon had violated a traffic law and all evidence seized as a result of the unlawful stop must be suppressed as fruit of the poisonous tree, and (2) even if the stop was lawful, the gun found in his vehicle should be suppressed as it was discovered pursuant to an illegal search. We reject both arguments.

A.

First, Gordon contends the Government lacked reasonable suspicion that his Expedition was in fact the same vehicle Officer Helvie observed speeding. Specifically, Gordon argues that Officer Helvie's initial observation—made through his rear-view mirror two blocks away from the vehicle's location—and the lack of any distinguishing characteristics of the observed SUV undermine the Government's case for reasonable suspicion. Accordingly, Gordon maintains that Officer Helvie only had a hunch that the Expedition stopped by Officer Lambright was the same Expedition he observed speeding several minutes before. Gordon contends that because the Government lacked reasonable suspicion to justify the stop of the vehicle, any evidence retrieved as a result of the stop is "fruit of the poisonous tree" and must be suppressed. See Wong Sun v. United States, 371 U.S. 471, 488 (1963).

The Fourth Amendment protects against "unreasonable searches and seizures." U.S. Const. amend. IV. A traffic stop constitutes a seizure and must be supported by probable cause or reasonable suspicion. Hollins, 685 F.3d at 706. Probable cause to conduct a traffic stop exists "[a]s long as an officer 'objectively has a reasonable basis for believing that the driver has breached a traffic law.'" United States v. Coney, 456 F.3d 850, 856 (8th Cir. 2006) (quoting United States v. Thomas, 93 F.3d 479, 485 (8th Cir. 1996)). Reasonable suspicion exists when an "officer is aware of 'particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant suspicion that a crime is being committed.'" Hollins,

685 F.3d at 706 (quoting United States v. Houston, 548 F.3d 1151, 1153 (8th Cir. 2008)).

After examining the record, we conclude the traffic stop was lawful. Notwithstanding the fact that Officer Helvie made repeated observations of a white Ford Expedition speeding in the same vicinity and confirmed that Gordon's Expedition was the vehicle he had observed, the helicopter unit's independent, continued observation of the speeding Expedition is enough alone to justify Officer Lambright's stop of the vehicle. It is undisputed that Officer Lambright relied on the helicopter unit's notification that the Expedition was traveling at excessive speeds and his personal observation of the helicopter unit's spotlight on the Expedition in performing the stop. See United States v. Robinson, 119 F.3d 663, 666-67 (8th Cir. 1997) ("An officer may rely on information provided by other officers and all of the information known to the team of officers involved in the investigation to provide justification for a stop."); see also United States v. Ortiz-Monroy, 332 F.3d 525, 529 (8th Cir. 2003). Therefore, based on the collective information, Officer Lambright had reasonable suspicion that Gordon had violated traffic laws warranting the stop of the Expedition.

B.

Second, Gordon argues that even if the stop was lawful, the discovery of the gun under the driver's seat was the result of an illegal search of the vehicle by Officer Ferber and his canine. Specifically, Gordon contends that the officers did not obtain his consent nor did they have probable cause to believe the vehicle contained any evidence of illegal drug activity, thereby justifying a canine search of the inside of the vehicle. Gordon maintains, accordingly, that the discovery of the gun is fruit of the poisonous tree and must be suppressed. We disagree that an illegal search occurred. Officer Ferber discovered the gun while conducting a valid search incident to

Gordon's lawful arrest.[4]  Thus, consent to search was not necessary, and the canine search is irrelevant as it neither resulted in the discovery of the gun nor had any effect on Officer Ferber's lawful search.

It is well established that "'searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'"  United States v. Davis, 569 F.3d 813, 816 (8th Cir. 2009) (quoting Katz v. United States, 389 U.S. 347, 357 (1967) (footnote omitted)). Included in those exceptions is a search incident to a lawful arrest.  Arizona v. Gant, 556 U.S. 332, 338 (2009).

As incident to a lawful arrest, an officer may search the vehicle pursuant to the dictates of the law at the time of the arrest.[5]  United States v. Casteel, 717 F.3d 635, 646 (8th Cir. 2013).  Binding precedent prior to Gant permitted officers to "search the

_____

[4]Gordon neither challenges his arrest nor contests that the helicopter unit observed him traveling at excessive speeds.  This observation alone established probable cause for Gordon's arrest.  See United States v. Frasher, 632 F.3d 450, 453 (8th Cir.), cert. denied, 132 S. Ct. 278 (2011) (stating that probable cause to make an arrest may be based on the collective information privy to all the officers involved in the investigation and not solely on the knowledge retained by the arresting officer).

[5]The arrest in this case occurred prior to the Supreme Court's decision in Arizona v. Gant, where the Court limited the justifications for a search of a vehicle incident to an arrest to those situations where "the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest."  556 U.S. 332, 351 (2009). Accordingly, the officers were permitted to rely on binding pre-Gant precedent.  See United States v. Casteel, 717 F.3d 635, 646 (8th Cir. 2013); United States v. Tschacher, 687 F.3d 923, 933 (8th Cir. 2012), cert. denied, 133 S. Ct. 1487 (2013) (applying the Supreme Court's holding in  Davis v. United States, where the Court held that "searches conducted in objectively reasonable reliance on binding appellate precedent are not subject to the exclusionary rule,"131 S. Ct. 2419, 2423-24 (2011)).

passenger compartment" of the vehicle "as a contemporaneous incident of [the] arrest," see id., even "where the arrestee has exited the vehicle," "has been handcuffed and placed in a police officer's patrol car," "or even removed from the scene entirely," United States v. Hrasky, 453 F.3d 1099, 1101 (8th Cir. 2006) (applying the holding in New York v. Belton, 453 U.S. 454, 459-60 (1981)). Here, after Gordon's lawful arrest, Officer Ferber found the gun in the passenger compartment of the car under the driver's seat, an area well within the permissible scope of a search incident to arrest.[6] Thus, Officer Ferber's search of the vehicle was legal.

Because we conclude that the gun was discovered and seized pursuant to a search incident to a lawful arrest, we need not address any of the other exceptions to the warrant requirement discussed by the district court. We also need not consider whether the use of the dog to examine the inside of the vehicle amounted to an illegal search because the dog did not alert on the gun. Moreover, even assuming without deciding that the use of the dog inside Gordon's vehicle exceeded the legal parameters of Fourth Amendment, the search-incident-to-arrest exception independently justifies Officer Ferber's discovery of the gun. See, e.g., United States v. Collins, 549 F.2d 557, 561 (8th Cir. 1977) (affirming the district court's denial of defendant's motion to suppress because the government offered an independent justification for the warrantless search of defendant's vehicle); see also United States v. Gillon, 348 F.3d 755, 760 (8th Cir. 2003).

---

[6]Notably, Officer Helvie testified that as of the date of the arrest, the Kansas City Police Department had trained officers that they could search the immediate area where the driver sat prior to the arrest.

-8-

## III.

For these reasons, we affirm the district court's order denying the motion to suppress.

_____