# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-2713
_____

United States of America

*Plaintiff - Appellee*

v.

Gregory Latrell Givens

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Northern District of Iowa - Cedar Rapids
_____

Submitted: April 18, 2014
Filed: August 15, 2014
_____

Before WOLLMAN, BYE, and SHEPHERD, Circuit Judges.
_____

SHEPHERD, Circuit Judge.

A jury found Gregory Latrell Givens guilty of being a felon in possession of ammunition in violation of 18 U.S.C. § 922(g)(1) and possessing with the intent to distribute crack cocaine after having been previously convicted of one or more felony drug offenses in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) and 851. Prior to trial, Givens filed a motion to suppress the evidence obtained during a traffic stop of his vehicle on October 7, 2010 and the evidence obtained during a search of his

apartment on December 21, 2010. The district court[1] denied the motion, and Givens appeals. We affirm the denial of the motion to suppress.

I.

The following facts were found by the magistrate judge and adopted by the district court. Unless we find the district court clearly erred in its factual determinations based on our review of the record as a whole, "'we are bound by the district court's findings of fact'" as it relates to the stop in question. United States v. Ellis, 501 F.3d 958, 961 (8th Cir. 2007) (quoting United States v. Rowland, 341 F.3d 774, 778 (8th Cir. 2003)).

While stopped at a stop sign at approximately 2:00 a.m. on October 7, 2010, Officer Nathan Baughan of the Cedar Rapids Police Department observed a vehicle driven by Givens pass in front of him that did not have registration plates. Officer Baughan turned to follow the vehicle and saw what appeared to be a temporary paper registration card in the rear window, but he could not read it due to the angle of the window and the darkness of the night.[2] Officer Baughan testified that he had previous experiences with temporary paper registration cards that were fraudulently issued, altered, or out of date. Officer Baughan further testified that there were other occasions where he could read a temporary paper registration card at night. Due to the vehicle's lack of any registration plate, front or back, and his inability to determine whether the paper affixed to the window was a valid temporary registration card, Officer Baughan decided to stop the vehicle and investigate. After exiting his vehicle

---

[1]The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa.

[2]Givens asserts that the paper registration card was visible from the squad car prior to Officer Baughan stopping the vehicle. We have reviewed the video, and it supports the finding that Officer Baughan saw a piece of paper affixed to the rear window and, thus, saw only what appeared to be a paper registration card.

and upon reaching the rear windshield, he determined that the paper in the window was a valid temporary registration card. However, by that time, he smelled the odor of marijuana emanating from the vehicle. Officer Baughan then searched the car and recovered bags of marijuana and rounds of ammunition.

On a separate, unrelated occasion two months later, Cedar Rapids Officer Christopher Bieber took his canine partner to Givens's apartment. Officer Beiber was acting on information from two anonymous calls to the department alleging the presence of drug activity in the apartment building. Officer Bieber was admitted into the building after buzzing one of the tenants and identifying himself as a police officer. Upon entering the building, Officer Bieber unleashed his canine and walked the canine through the hallways of the building. The canine sniffed around each of the apartment doors and eventually alerted at Givens's apartment. A search warrant was obtained based on the canine's alert, and a search pursuant to the warrant revealed crack cocaine in the apartment.

Givens was charged with one count of being a felon in possession of ammunition and one count of possession of crack cocaine. He filed a motion to suppress the evidence obtained during both encounters. The district court denied the motion, finding that Officer Baughan had reasonable suspicion to conduct the traffic stop because he could not determine whether the paper in the rear window of Givens's vehicle was in fact a valid temporary paper registration card. The court also found, in applying Eighth Circuit precedent, that the dog sniff around the exterior of the apartment door did not violate the Fourth Amendment.

A jury found Givens guilty of both counts, and Givens was sentenced to 262 months imprisonment. Givens now appeals the denial of his motion to suppress.

## II.

### A.

"In an appeal from a district court's denial of a motion to suppress evidence, this court reviews factual findings for clear error, and questions of constitutional law de novo." United States v. Hollins, 685 F.3d 703, 705 (8th Cir. 2012). A traffic stop constitutes a seizure for purposes of the Fourth Amendment and therefore must be supported by probable cause or reasonable suspicion. Id. at 705-06. Reasonable suspicion exists when an "officer is aware of 'particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant suspicion that a crime is being committed.'" Id. at 706 (quoting United States v. Houston, 548 F.3d 1151, 1153 (8th Cir. 2008)); see also United States v. Walker, 555 F.3d 716, 719 (8th Cir. 2009) ("'Whether the particular facts known to the officer amount to an objective and particularized basis for a reasonable suspicion of criminal activity is determined in light of the totality of the circumstances.'" (quoting United States v. Halls, 40 F.3d 275, 276 (8th Cir. 1994))). "Even an officer's incomplete initial observations may give reasonable suspicion for a traffic stop." Hollins, 685 F.3d at 706.

Under Iowa law, "[r]egistration plates issued for a motor vehicle . . . shall be attached to the motor vehicle, one in the front and the other in the rear." Iowa Code Ann. § 321.37. The plates

> shall at all times be securely fastened in a horizontal position to the vehicle for which it is issued so as to prevent the plate from swinging and at a height of not less than twelve inches from the ground, measuring from the bottom of the plate, in a place and position to be clearly visible and shall be maintained free from foreign materials and in a condition to be clearly legible.

Iowa Code Ann. § 321.38. There is an exception, permitting that "[a] vehicle may be operated upon the highways . . . without registration plates for a period of forty-five days after the date of delivery of the vehicle to the purchaser from a dealer if a card bearing the words 'registration applied for' is attached on the rear of the vehicle." Iowa Code Ann. § 321.25. The "card shall have plainly stamped or stenciled the registration number of the dealer . . . and the date of delivery of the vehicle." Id. Operating a vehicle on the highway without displaying valid registration plates or a temporary paper registration card amounts to a simple misdemeanor. Iowa Code Ann. § 321.98.

Givens argues that Officer Baughan lacked reasonable suspicion for the traffic stop. Specifically, Givens maintains that because Officer Baughan could not read the temporary registration card due to the darkness and the angle of the rear window, he could not reasonably suspect that the card was forged, altered, out of date, or otherwise illegal. The district court, in adopting the report and recommendation of the magistrate judge, expressly found that Officer Baughan, before stopping the vehicle, could only see what appeared to be a temporary paper registration card in the rear window, but did not know whether the paper was in fact a registration card. This finding is critical, particularly because we have previously upheld a traffic stop under conditions where a vehicle did not display a metal license plate and the officer saw only what appeared to be a paper tag posted in the rear window, but did not know whether the paper affixed to the window was a valid registration tag. United States v. Mendoza, 691 F.3d 954, 959 (8th Cir. 2012), cert. denied, 133 S. Ct. 965 (2013) and cert. denied, 133 S. Ct. 966 (2013).

Officer Baughan credibly testified that his suspicion arose because he could not determine whether the paper affixed to the rear window was a valid temporary registration card. In his experience, temporary registration cards are generally legible when observed from his patrol car and Officer Baughan testified that he had on prior occasions been able to read temporary registration cards at nighttime. Based on

Officer Baughan's testimony and experience, we conclude it was objectively reasonable for Officer Baughan to expect that a properly displayed valid registration card would be readable from his location. See United States v. Sanchez, 572 F.3d 475, 479 (8th Cir. 2009) (determining that it was objectively reasonable for the officer to "expect that the name of the issuing jurisdiction would appear conspicuously on the face of an official document, and to investigate further if a name was not visible"). Because he could not decipher any information on the paper affixed to the rear window, Officer Baughan reasonably suspected that the vehicle lacked valid registration. It is not uncommon for officers to stop vehicles due to the lack of an apparent temporary registration tag, and such stops are generally upheld as supported by reasonable suspicion. See, e.g., United States v. Edgerton, 438 F.3d 1043, 1047-48 (10th Cir. 2006) (holding the officer possessed reasonable suspicion to stop the vehicle because the vehicle's assigned registration was not readily apparent, leading the officer to question whether the paper affixed to the window was in fact a temporary registration tag); United States v. Tipton, 3 F.3d 1119, 1122 (7th Cir. 1993) ("The driver's failure to display prominently a registration sticker, alone, would provide an officer with reasonable suspicion sufficient to justify, at the very least, an investigatory stop.").

Givens cites United States v. Wilson, 205 F.3d 720 (4th Cir. 2000) (en banc) in support of his argument that an officer's inability to read a temporary paper registration tag is not enough to stir suspicion of criminal activity. We find this case distinguishable from the facts before us. In Wilson, the officer observed a vehicle traveling with a paper registration tag but could not determine the expiration date, which appeared to be "a function of the darkness and the small space provided for writing in the date." Id. at 722-23. The officer performed a traffic stop to determine whether the registration had expired. Id. The Fourth Circuit, sitting en banc, reversed the district court's determination that the stop was valid. Id. at 724. The court noted that "the officer testified that he had no suspicion at all—that Wilson was driving

without a license, operating an unregistered vehicle, or otherwise violating the law." Id. at 723. The court also reasoned that

> [t]here was nothing illegal about the operation of the vehicle, and nothing appeared illegal about the temporary tag. It was dark, and both cars were moving. Although Officer McLemore could not see the written-in expiration date on the tag, that appears to have been a function of the darkness and the small space provided for writing in the date. There is no evidence that the temporary tag was illegible or in any way obliterated, smudged, or faded.

Id. (internal quotation marks omitted). The court concluded that upholding a traffic stop under the circumstances where the officer saw nothing wrong and suspected nothing "would permit the police to make a random, suspicionless stop of any car with a temporary tag" and "[t]he Fourth Amendment does not afford the police such unbridled discretion." Id. at 724.

Unlike the officer in Wilson, who observed a valid temporary tag but simply could not read the expiration date, Officer Baughan could not determine whether the paper affixed to the rear window of Givens's vehicle was in fact a temporary registration card. Moreover, Officer Baughan indicated that he is often able to read temporary cards at night despite dark conditions. This directly contrasts with the officer in Wilson who admitted that the inability to completely read temporary tags was common in his experience, making suspicion of wrongdoing less likely in that case.

"Without an opportunity to inspect the paper closely, [Officer Baughan] could not eliminate the possibility that the [vehicle] did actually display valid proof of [] registration." Sanchez, 572 F.3d at 479. "A determination that reasonable suspicion exists, however, need not rule out the possibility of innocent conduct." United States v. Arvizu, 534 U.S. 266, 277 (2002). We therefore conclude that because Givens's

vehicle did not have metal license plates and lacked a readily apparent temporary paper registration card, Officer Baughan had reasonable suspicion that the vehicle did not comply with state law. Sanchez, 572 F.3d at 479 (holding that the officer had reasonable suspicion to suspect the paper affixed to the rear window was not an official registration tag due to the inability of the officer to read the issuing state on the tag). Accordingly, we conclude Officer Baughan had an objectively reasonable basis justifying the stop of the vehicle.

## B.

The district court also did not err in denying the motion to suppress evidence recovered from the apartment. Givens argues that the Supreme Court's recent decision in Florida v. Jardines, 133 S. Ct. 1409 (2013) controls this case. In Jardines, the Court held that the officers' use of a drug-sniffing dog while on the front porch of a home constituted a search because the officers trespassed on the constitutionally protected curtilage of the home. Id. at 1415.

We need not determine whether Jardines controls the facts of this case. Jardines was decided in March of 2013, approximately two years after the dog sniff at issue here. Accordingly, even assuming Jardines calls into question previous cases involving the use of a dog in the hallway of an apartment building to sniff around the door of an apartment, exclusion of the evidence would not be appropriate because, at the time of the dog sniff, Officer Bieber was objectively reasonable in relying on binding circuit precedent. Davis v. United States, 131 S. Ct. 2419, 2428 (2011); see also United States v. Holleman, 743 F.3d 1152, 1159 (8th Cir. 2014) (holding that even if Jardines prohibited the officers' action, the search in question occurred prior to the Jardines decision, and thus, officers were entitled to "objective reasonable reliance on existing judicial precedent"). At the time of the dog sniff, our circuit had determined that the use of a dog in the hallway of an apartment building to sniff around the door of an apartment was not a search. United States v. Scott, 610 F.3d

1009, 1016 (8th Cir. 2010).  Accordingly, even if <u>Jardines</u> casts doubt on our holding in <u>Scott</u>, Officer Bieber objectively and reasonably relied on our decision in <u>Scott</u> in the use of his canine, and the exclusionary rule, therefore, does not apply under these circumstances.  <u>United States v. Davis</u>, ___ F.3d ___, ___, 2014 WL 3719097, at *4 (8th Cir. July 29, 2014) (determining that the officers objectively and reasonably relied on the decision in <u>Scott</u> in conducting a dog sniff of the apartment door frame and noting that nothing in the Supreme Court's "opinion in <u>Davis</u> suggested that its good faith exception is limited to longstanding judicial precedent").

III.

For the reasons stated, we affirm the district court's denial of the motion to suppress.[3]

_____

[3]We deny Givens's pro se motion to dismiss the case based on his jurisdictional objection that the indictment does not charge an offense.  Having reviewed both the motion and the indictment, we find Givens's claims frivolous, having no legal rationale or factual basis.