# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-2100
_____

United States of America

*Plaintiff - Appellee*

v.

Geoffrey Scott Gaffney

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Northern District of Iowa, Waterloo
_____

Submitted: February 12, 2015
Filed: June 16, 2015
_____

Before BYE, BEAM, and BENTON, Circuit Judges.
_____

BENTON, Circuit Judge.

Geoffrey Scott Gaffney conditionally pled guilty to one count of possession with intent to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841 (b)(1)(A). He appeals the denial of his motion to suppress evidence seized from his car. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

Officer Albert Bovy was stopped at a red light. Directly in front of him, he saw Gaffney's vehicle approaching the intersection from the opposite direction. As the light changed to green, the vehicle, without slowing, moved through the intersection. The officer made a u-turn to follow it. Gaffney immediately braked hard and made a right turn. The officer turned on his lights. The vehicle stopped.

Officer Bovy approached and said he estimated Gaffney was driving 50 to 55 mph in a 35 mph zone. Gaffney replied, "I thought I was only going in the 40s." While he was looking for an insurance card, dispatch told the officer that Gaffney had a previous narcotics history and was still involved in illegal narcotics. Returning to the vehicle, the officer noticed Gaffney appeared nervous with beads of sweat on his forehead, a shaky voice and hands, and heavy breathing. The officer asked if he had any drugs or weapons in the vehicle. Gaffney answered "no" but declined permission to search his vehicle. The officer ordered him to exit the vehicle to prepare for a dog sniff (the officer had the dog in his car). Conducting a pat-down search, the officer detected a long round object with a bulb on the end. He asked Gaffney about it. Gaffney said nothing was in his pocket. The object was a meth pipe. The officer arrested Gaffney and had the vehicle towed. An inventory search uncovered two large Ziploc bags with four pounds of ice meth.

Gaffney moved to suppress any evidence from the traffic stop, challenging both the lawfulness of the stop and the pat-down search. At the suppression hearing, Officer Bovy testified he received training in identifying speed eleven years earlier. He typically did not "do much in the way of speed violations," and did not remember if he had "ever" turned on his in-car radar unit. He said his estimate of 50-55 mph was based on his general experience with traffic stops and his familiarity with the area. He did not know the distance the car traveled from when it first appeared until

it passed him. Gaffney presented evidence that his vehicle traveled about 473 feet in nine seconds, an average speed of 35.8 miles per hour.[1]

The district court[2] denied the motion. Gaffney entered a conditional guilty plea, preserving the right to appeal both issues.

## II.

"In an appeal from a district court's denial of a motion to suppress evidence, this court reviews factual findings for clear error, and questions of constitutional law *de novo*." ***United States v. Gordon***, 741 F.3d 872, 875 (8th Cir. 2013). "We may affirm the denial of a motion to suppress on any grounds supported by the record." ***United States v. Allen***, 705 F.3d 367, 369 (8th Cir. 2013).

## A.

Gaffney argues Officer Bovy had neither reasonable suspicion nor probable cause for a traffic stop. "[T]o justify [a traffic stop], officers need only 'reasonable suspicion.'" ***Heien v. North Carolina***, 135 S. Ct. 530, 536 (2014). Reasonable suspicion exists when an officer has a "particularized and objective basis for suspecting the particular person stopped of breaking the law." ***Id.*** (internal quotation marks omitted). "[T]he ultimate touchstone of the Fourth Amendment is 'reasonableness.'" ***Id.*** (some internal quotation marks omitted), *quoting* ***Riley v.***

---

[1] The video from the officer's dash-camera shows Gaffney's headlights coming into view directly in front of him and passing him nine seconds later. A defense investigator estimated the location of Gaffney's vehicle when it first appeared. The distance between this location and Bovy's location is 473 feet.

[2] The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa.

*California*, 134 S. Ct. 2473, 2482 (2014). "The determination of whether . . . reasonable suspicion existed is not to be made with the vision of hindsight, but instead by looking to what the officer reasonably knew at the time." ***United States v. Hollins***, 685 F.3d 703, 706 (8th Cir. 2012) (internal quotation marks omitted). "Even an officer's incomplete initial observations may give reasonable suspicion for a traffic stop." ***United States v. Givens***, 763 F.3d 987, 989 (8th Cir. 2014) (internal quotation marks omitted). "Mistakes of law or fact, if objectively reasonable, may still justify a valid stop." ***Hollins***, 685 F.3d at 706.

This court has not resolved whether an officer's visual estimate of speed alone can furnish either probable cause or reasonable suspicion to stop a vehicle. This court has held that a "helicopter unit's independent, continued observation of [a] speeding [vehicle] is enough alone to justify [a] stop of the vehicle." ***Gordon***, 741 F.3d at 876. The Tenth Circuit has observed, "It's long been the case that an officer's visual estimation can supply probable cause to support a traffic stop for speeding in appropriate circumstances." ***United States v. Ludwig***, 641 F.3d 1243, 1247 (10th Cir. 2011). In that case, the district court found credible the trooper's visual estimate, noting his good view to gauge the approaching vehicle, the clear day, the trooper's 15 years' experience as a highway patrolman watching cars and estimating speeds, and the lack of reasons to discredit the speed estimate. "In these circumstances, the district court's factual finding about the reliability of the trooper's visual estimation remains untouched, must be affirmed, itself sufficient to support the traffic stop." ***Id.*** at 1247-48.

The Fourth Circuit addressed an officer's visual estimate that a defendant was over the posted speed limit by only five miles per hour.

> [T]he Fourth Amendment does not allow, and the case law does not support, blanket approval for the proposition that an officer's visual speed estimate, in and of itself, will always suffice as a basis for

probable cause to initiate a traffic stop. Instead, for the purposes of the Fourth Amendment, the question remains one of reasonableness. Critically, and as further explained below, the reasonableness of an officer's visual speed estimate depends, in the first instance, on whether a vehicle's speed is estimated to be in significant excess or slight excess of the legal speed limit. If slight, then additional indicia of reliability are necessary to support the reasonableness of the officer's visual estimate.

*United States v. Sowards*, 690 F.3d 583, 591 (4th Cir. 2012). That court found "at a minimum, there must be sufficient indicia of reliability for a court to credit as reasonable an officer's visual estimate of speed." *Id*. In another case, the Fourth Circuit emphasized that "the probable cause inquiry is—as always—reasonableness, and the analysis remains whether the 'totality of circumstances' established the 'reasonableness of the officer's visual speed estimate.'" *United States v. Mubdi*, 691 F.3d 334, 339 (4th Cir. 2012) (finding that the totality of circumstances supports the stop when two officers each independently determined, by visual observation, that the defendant was exceeding the speed by 8 to 10 mph) (quoting *Sowards*, 690 F.3d at 592-93), *vacated on other grounds in*, 133 S. Ct. 2851 (2013).

In this case, the district court found that Officer Bovy "only rarely issues speeding citations," was "unsure whether he has actually ever turned on his in-car radar," "his experience with traffic stops is unrelated to speeding violations," and he "was unable to even provide an estimated distance that Defendant's vehicle traveled." *United States v. Gaffney*, 2014 WL 794568, at *4 (N. D. Iowa, February 27, 2014). Unlike *Ludwig*, the district court specifically said it did "not place a great deal of confidence in Officer Bovy's estimation of the speed of the vehicle." *Id.* However, relying on dash-camera video and the measurement by the defense investigator, the district court found "the totality of the circumstances establishes the reasonableness of Officer Bovy's belief that Defendant was speeding as he approached the intersection." *Id.* at *5. The court noted: "Because this was an average speed,

Defendant likely traveled faster than 35.8 miles per hour at some point or points over the course of the nine seconds." *Id.*

Although the district court lacked confidence in the officer's estimate, the issue is not whether the evidence supports his belief that Gaffney was traveling at *50-55 mph*. "[S]earches and seizures based on mistakes of fact can be reasonable." *Heien*, 135 S. Ct. at 536. The issue is whether the totality of the circumstances at the time of the stop supports the reasonableness of the officer's belief that Gaffney was speeding *at all*. *See **United States v. $45,000 in U.S. Currency***, 749 F.3d 709, 715 (8th Cir. 2014) ("Any traffic violation, however minor, provides probable cause for a traffic stop.").

Officer Bovy was familiar with the area, thought Gaffney was speeding, and Gaffney "braked hard" immediately after Bovy u-turned to follow him. Based on the totality of these facts—corroborated by Gaffney's admission and the investigator's measurement—the district court correctly concluded that Officer Bovy's belief that Gaffney was speeding was objectively reasonable.

B.

Gaffney challenges the pat-down search arguing that Officer Bovy had no reason to suspect he was armed and dangerous. "Officers may conduct a protective pat-down search for weapons during a valid stop . . . when they have objectively reasonable suspicion that a person with whom they are dealing might be armed and presently dangerous and criminal activity might be afoot." *United States v. Preston*, 685 F.3d 685, 689 (8th Cir. 2012) (internal quotation marks omitted). "In determining whether reasonable suspicion exists, we consider the totality of the circumstances in light of the officers' experience and specialized training." *Id.* "[A] pat-down is permissible if a reasonably prudent man in the circumstances would be

warranted in the belief that his safety or that of others was in danger." ***Id.*** (internal quotation marks omitted).

The stop occurred late at night in a high-crime area. ***United States v. Roggeman***, 279 F.3d 573, 578 (8th Cir. 2002) ("Trooper Moore was alone, he stopped Roggeman late at night, and the scene of the stop was poorly lit. These facts go to officer safety."). Gaffney was abnormally nervous. *See **United States v. Hanlon***, 401 F.3d 926, 930 (8th Cir. 2005) ("Hanlon's extreme nervousness and failure to make eye contact with Halverson bolstered Halverson's reasonable suspicion that Hanlon was armed and dangerous."). Officer Bovy was told that he had a narcotics conviction and was still involved in the narcotics trade. "[I]t is reasonable for an officer to believe a person may be armed and dangerous when the person is suspected of being involved in a drug transaction." ***United States v. Bustos-Torres***, 396 F.3d 935, 943 (8th Cir. 2005). Officer Bovy had reasonable suspicion that Gaffney could be armed and dangerous and criminal activity was afoot. The district court did not err in upholding the pat-down search.

The judgment is affirmed.

\* \* \* \* \* \* \*

BYE, Circuit Judge, dissenting.

I disagree an objectively reasonable officer would have had a sufficient basis to stop Gaffney's car for speeding. Consequently, I would reverse the district court's denial of Gaffney's motion to suppress, vacate his conviction, and remand for further proceedings. I therefore respectfully dissent from Section II.A. of the majority's opinion and would not reach Section II.B.

"[T]he underlying command of the Fourth Amendment is always that searches and seizures must be reasonable . . . ." Wilson v. Arkansas, 514 U.S. 927, 931 (1995) (internal quotation marks omitted). As applicable to Gaffney's case, a traffic stop is reasonable "when an officer is aware of particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant suspicion" that a traffic violation has occurred. United States v. Gordon, 741 F.3d 872, 876 (8th Cir. 2013) (internal quotation marks omitted).

The objective facts of Gaffney's case are contained within the video created by the dashboard camera located in Officer Bovy's patrol car. From this video, the investigator determined Gaffney's vehicle traveled at an average of 35.8 miles per hour, in a 35 mile per hour speed zone, from the time Officer Bovy could first see Gaffney's vehicle on Franklin Street until the point where Gaffney's vehicle was parallel with Officer Bovy's patrol car. Over the course of this period, the vehicle appears to travel at a consistent speed, and Gaffney does not brake until after his vehicle has already passed Officer Bovy's patrol car. Further, when Gaffney brakes, he is doing so to slow his vehicle to make a right turn and almost immediately stops. All of these events occurred during nighttime hours.

From these facts, the majority somehow concludes a reasonable officer would have a sufficient basis to stop Gaffney for speeding. I disagree. To conclude Officer Bovy or any other officer could visually discern a difference of a mere .8 miles per hour above the posted speed limit is confounding. See United States v. Sowards, 690 F.3d 583, 594 (2d Cir. 2012) ("[T]he accuracy of human estimation of speed cannot easily, readily, and accurately determine between such small variations [5 m.p.h.] in speed." (internal quotation marks omitted)). Moreover, although this figure is an average, and the district court concluded Gaffney "likely traveled faster than 35.8 miles per hour at some point or points over the course of the nine seconds," the objective facts do not support this conclusion. The video shows Gaffney's vehicle

traveling at a consistent speed, and he did not begin to slow his vehicle until he passed the end point of the investigator's measurements.

Further, the majority attempts to make Officer Bovy's familiarity with the area and that he thought Gaffney was speeding into objective facts. While courts have considered an officer's visual estimation of speed as an objective fact to consider in the reasonable suspicion analysis, those courts have found the officers had the necessary skills, training, and experience to make such an estimation. See United States v. Mubdi, 691 F.3d 334, 341 (4th Cir. 2012), vacated on other grounds, 133 S. Ct. 2851 (2013) (finding officers' visual estimates were sufficient to support probable cause because the two officers gave virtually identical estimates and were required, as part of a radar certification class, to visually estimate the speed of vehicles within a narrow margin of error); United States v. Ludwig, 641 F.3d 1243, 1247 (10th Cir. 2011) (crediting an officer's visual estimation of speed to determine whether probable cause to stop existed partially because the officer possessed 15 years' experience as a highway patrolman watching cars and estimating speeds); State v. Dunham, 67 A.3d 275, 279 (Vt. 2013) (considering whether officers "receive[d] proper roadside and academy training, [have] spen[t] considerable time on road patrol, gain[ed] experience estimating speed and comparing estimates against radar, and historically exhibit[ed] a margin of error of only a few miles per hour" as factors to determine whether the officers are qualified to visually estimate speed).

Contrary to cases which have utilized officers' estimations as objective facts, Officer Bovy lacked the credentials to visually estimate speed. He received visual estimation speed training over a decade prior to Gaffney's stop, he did not provide a margin of error as to how accurate any visual estimations of speed he previously made had been, he had issued very few speeding citations, and he believed he had never turned on the radar in his patrol car. Further, he was unable to provide an estimate of the distance Gaffney's car covered as it approached Officer Bovy's patrol car although he explained monitoring the distance a vehicle travels over a surface

area is part of the technique he utilizes for visually estimating speed. Because of Officer Bovy's inexperience in visually estimating speed, he grossly estimated that Gaffney's speed was 50 to 55 miles per hour, well above Gaffney's actual average speed. Officer Bovy's estimation is therefore subjective and does not have the support to be considered as a particularized, objective fact when determining whether reasonable suspicion existed. See Sowards, 690 F.3d at 588-90, 594 (finding that because an officer lacked specialized training in the estimation of vehicle speeds, lacked a technique or method to "guess" visual speeds, and had difficulty with measurements, his visual estimation of speed "was in fact a guess that was merely conclusory, without an appropriate factual foundation, and simply lacking in the necessary indicia of reliability to be an objectively reasonable basis for probable cause to initiate a traffic stop").

The only other objective facts cited by the majority to support its conclusion are that Gaffney admitted to driving "in the 40s" and he "braked hard" after Officer Bovy made a u-turn. First, I do not believe we can consider Gaffney's alleged admission to speeding because Officer Bovy testified Gaffney made this statement after Officer Bovy had already stopped the vehicle. See United States v. $45,000.00 in U.S. Currency, 749 F.3d 709, 715 (8th Cir. 2014) ("[I]f it was not objectively reasonable for the officer to believe that a violation was occurring at the time that the officer decided to effect the stop, then the officer lacked probable cause to seize the motorist. . . . Accordingly, the critical inquiry . . . is what the stopping officer observed *before* pulling over a motorist."); see also United States v. Sanders, 196 F.3d 910, 913 (8th Cir. 1999) ("The determination of whether probable cause existed is not to be made with the vision of hindsight, but instead by looking to what the officer reasonably knew at the time.").

Second, the video taken by the dashboard camera does not support Officer Bovy's assertion that Gaffney "braked hard" after he passed Officer Bovy's patrol car. Instead, the video depicts Gaffney braking at a reasonable pace to make a right

turn and immediately stop. Nonetheless, even if we were to consider braking as an objective fact, courts have not found braking, standing alone, as a sufficient basis to conclude an individual was speeding; rather, other indicia of speeding were present which supported the constitutionality of the traffic stop. See United States v. Colden, No. 11-M-989-SKG, 2011 WL 5039777, at *1 (D. Md. Oct. 21, 2011) (finding the officer's uncontested visual estimation of defendant's speed, combined with the officer's observations that the vehicle shook and defendant tapped his brakes, amounted to reasonable articulable suspicion that defendant was speeding); State v. Steele, No. 101,250, 2009 WL 3428624, at *3 (Kan. Ct. App. Oct. 23, 2009) (finding substantial competent evidence supporting the trial court's finding of reasonable suspicion of speeding because the officer observed defendant traveling at an excessive rate of speed, the officer heard a loud engine roar, and the officer observed defendant slam on his brakes). Gaffney's case lacks any other objectively reasonable indication that he was speeding, and as a result, braking alone cannot provide reasonable suspicion for stopping his vehicle.

For the reasons provided, I would reverse the denial of Gaffney's motion to suppress, vacate his conviction, and remand for further proceedings.

_____