# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-3453
_____

United States of America

*Plaintiff - Appellee*

v.

Marlon Maurice Winborn

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: June 12, 2024
Filed: August 5, 2024

_____

Before LOKEN, ERICKSON, and GRASZ, Circuit Judges.

_____

GRASZ, Circuit Judge.

After police arrested Marlon Winborn, the government charged him with one count of unlawfully possessing a firearm as a felon. Winborn moved to suppress all evidence, arguing police did not have reasonable suspicion in making the initial

investigatory stop that led to his arrest. The district court[1] denied Winborn's motion. Afterward, Winborn pled guilty to being a felon in possession of a firearm, but he reserved the right to appeal the denial of his motion to suppress. Winborn now appeals the denial of his motion to suppress. We affirm.

## I. Background

On May 18, 2022, two Minneapolis police officers responded to two separate 911 calls reporting gunshots in an area that frequently had similar "shots fired" complaints. The first caller, who provided his first name and callback number, reported hearing nine gunshots. The second caller, who did not provide contact information, reported hearing seven gunshots. After learning of these complaints, the officers drove to the scene of the reported gunshots. Upon their arrival at the scene, a 911 dispatcher reported a third call. This caller, who provided his full name and callback number, reported hearing seven shots fired. The caller also reported seeing two people wearing masks standing by a red Saturn without a front license plate, as well as seeing a white Volkswagen Passat "take off."

Two minutes after receiving the third caller's report, the officers saw a parked, red Saturn one block from the scene of the reported gunshots. They identified at least two occupants in the vehicle, but they did not confirm whether the Saturn was missing a front license plate. The officers approached the vehicle, one with her weapon drawn and the other with his hand on his weapon. One of the officers saw passengers in the front and rear seats, in addition to the driver's seat. Winborn was in the driver's seat.

---

[1]The Honorable Patrick J. Schiltz, Chief Judge, United States District Court for the District of Minnesota, adopting the report and recommendations of the Honorable John F. Docherty, United States Magistrate Judge for the District of Minnesota.

While approaching the vehicle, one of the officers called out, "[w]hat's up, guys?" Winborn then twice replied, "you got the wrong vehicle." The officer responded, "[t]hat's cool, I don't know that." As the officer was still approaching the vehicle, he told Winborn to put his hands on the wheel. He then told the front passenger to put his hands on the dash and the rear passenger to put his hands on the back of the seat. Once both officers were next to the car, one officer asked to see Winborn's identification, and Winborn, who had become agitated, reached for his identification. While doing so, the officer saw what the officer suspected to be marijuana in Winborn's lap. The officer directed all the passengers to exit the vehicle and arrested Winborn. Once the occupants were out of the red Saturn, officers conducted a search and discovered three firearms.

Winborn filed a motion to suppress evidence obtained from the search, arguing it was obtained in violation of the Fourth Amendment. Specifically, he argued the 911 calls did not give officers reasonable suspicion to make the initial stop, which he claimed began when the officers told the occupants to place their hands where they could be seen. The district court rejected Winborn's argument, finding the circumstances established reasonable suspicion. Winborn now appeals the denial of his motion to suppress. Because we hold the officers had reasonable suspicion to make the initial stop, we affirm the district court.

## II. Analysis

"We review the denial of a motion to suppress *de novo* but the underlying factual determinations for clear error, giving due weight to inferences drawn by law enforcement officials." *United States v. Clutter*, 674 F.3d 980, 982 (8th Cir. 2012).

The Fourth Amendment protects against unreasonable searches and seizures. U.S Const. amend. IV. "An officer may conduct a Fourth Amendment stop to investigate a crime only if the officer has a reasonable suspicion that that person had committed or was committing a crime." *United States v. Juvenile TK*, 134 F.3d 899,

902 (8th Cir. 1998) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). "Reasonable suspicion exists when an 'officer is aware of particularized, objective facts which, when taken together with rational inferences from those facts, reasonably warrant suspicion that a crime is being committed.'" *United States v. Givens*, 763 F.3d 987, 989 (8th Cir. 2014) (cleaned up) (quoting *United States v. Hollins*, 685 F.3d 703, 706 (8th Cir. 2012)). Reasonable suspicion is based on the totality of circumstances. *See Pollreis v. Marzolf*, 9 F.4th 737, 744 (8th Cir. 2021). A reliable witness's tip can provide reasonable suspicion to make an investigatory stop. *Navarette v. California*, 572 U.S. 393, 399–400 (2014); *see United States v. Mosley*, 878 F.3d 246, 252–53 (8th Cir. 2017). Winborn argues the officers lacked reasonable suspicion to make the stop because the 911 callers' tips were not reliable; specifically, he argues the third caller lacked reliability because he did not have specific knowledge that Winborn's vehicle was involved in the shooting.

Here, we examine whether the police officers had reasonable suspicion to make an investigatory stop at the time they told Winborn to put his hands on the wheel. A 911 caller's tip can, under the totality of circumstances, support an officer's reasonable suspicion if the caller and the tip are reliable. *See Mosley*, 878 F.3d at 253. Reliability is determined by evaluating an eyewitness's knowledge of the alleged incident, the contemporaneous reporting of the event, and the ability to hold the caller accountable for potentially false reports. *Id.* Winborn argues his case is distinguishable from *Mosley*, while the government argues it is analogous.

In *Mosley*, a witness drove by a bank that had just been robbed and saw two men fleeing. *Id.* at 250. While reporting what he saw to 911, the witness lost sight of the two robbers, but he reported seeing only a gray or silver Taurus leave the bank's vicinity. *Id.* The witness followed the vehicle and gave 911 its location and direction of travel. *Id.* Notably, he only saw one occupant in the vehicle, a female driver, so he was unsure whether the Taurus was involved in the robbery. *Id.* Nevertheless, police relied on his information to stop the vehicle; they searched the trunk and found two men with masks and cash hiding there. *Id.*

-4-

The *Mosley* defendants argued police officers lacked reasonable suspicion to stop their vehicle. *Id.* at 251. We concluded the officers had reasonable suspicion, rejecting the argument that a witness must be "able to state 'concretely'" whether a suspicious vehicle is involved in a crime. *Id.* Based on the Taurus's "close temporal and physical proximity" to the scene of the crime, we concluded the totality of the circumstances—including the witness's tip—supported a reasonable suspicion to stop the vehicle. *Id.* at 252.

Here, as was the case in *Mosley*, the totality of the circumstances supported the officers' reasonable suspicion. Two 911 callers reported hearing multiple shots fired in the same area. A third caller reported seeing two masked suspects near a red Saturn near where those shots were fired, while another vehicle drove off. That the suspects wore masks also indicated suspicious, perhaps criminal, activity. Though Winborn alleges the third caller could not concretely state whether the suspects committed a crime, we rejected a similar requirement in *Mosley*. *See id.* As mentioned, Winborn was located one block away from the reported scene, just two minutes after officers received information about the red Saturn. Moreover, when one of the officers began to approach the red Saturn, Winborn suspiciously insisted, "[y]ou've got the wrong car."

While these facts separately could be consistent with innocent behavior, when taken together, they give rise to reasonable suspicion to justify the stop under the totality of the circumstances.[2] *See United States v. Trogdon*, 789 F.3d 907, 914 (8th Cir. 2015); *Juvenile TK*, 134 F.3d at 904 ("[I]n light of the totality of circumstances . . . , in particular, the short distance between the location of the stop and the crime

---

[2]The government argues Winborn's Saturn further matched the third 911 caller's description because it was missing its front license plate. But Winborn contends the officers' body camera footage suggests they were not in a position to see the front of the vehicle when they ordered Winborn to place his hands on the wheel. Even if the officers did not corroborate the missing front plate, the record still reflects the officers had reasonable suspicion under the totality of circumstances to stop the vehicle.

scene, . . . and the allegations of conduct that was clearly criminal, . . . there was reasonable suspicion to support the investigative stop.").  The district court did not err in denying the motion to suppress.

### III.  Conclusion

We affirm the district court.

_____