# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-3374

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Nebraska. |
| Anthony Eugene Hollins, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: May 18, 2012
Filed: July 16, 2012

_____

Before MURPHY, BENTON, and SHEPHERD, Circuit Judges.

_____

BENTON, Circuit Judge.

Anthony Eugene Hollins was arrested for possessing a firearm in violation of 18 U.S.C. § 922(g)(1). He moved to suppress the firearm obtained from the vehicle he was riding in. The district court[1] denied the motion. Hollins pled guilty, reserving the right to appeal the denial of his motion. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

_____

[1] The Honorable Laurie Smith Camp, Chief Judge, United States District Judge for the District of Nebraska.

On July 31, 2010, Hollins was a passenger in an SUV that had no license plates. Omaha police spotted the SUV, noticed the lack of license plates, stopped the vehicle, and shined a spotlight on it. Approaching the SUV, an officer saw what appeared to be a valid "In Transit" sticker, although he did not then verify its expiration date. In Nebraska, an In Transit sticker may replace a license plate for 30 days after the purchase of a vehicle. **Neb. Rev. Stat. § 60-376 (2010).** The officer's experience with phony In Transit stickers had taught him to verify them, so he asked the driver for his license, insurance card, and registration.

The driver could not produce a driver's license. The driver told the officer his information, handing him his registration. The officer returned to his vehicle to verify whether the driver had a license. Discovering that the driver's license was suspended, and there were two outstanding arrest warrants, the officer arrested the driver. The driver released the SUV to Hollins, so another officer checked whether he had a valid driver's license. Hollins, unfortunately, did not.

Before impounding the vehicle, the officers conducted an inventory search, finding a .380 pistol underneath the center console. Hollins, a previously convicted felon, was arrested.

Hollins moved to suppress the firearm, arguing that because the SUV had a valid In Transit sticker, the officer lacked probable cause or reasonable suspicion to stop the SUV. Further, Hollins argued that, even if the officer was reasonably mistaken in believing there was a traffic violation, any reasonable suspicion vanished when the officer saw the In Transit sticker. After then, Hollins reasoned, continuing the stop violated *Terry v. Ohio*, 392 U.S. 1 (1968), and all the evidence should be suppressed. Hollins renews these arguments on appeal.

-2-

In an appeal from a district court's denial of a motion to suppress evidence, this court reviews factual findings for clear error, and questions of constitutional law *de novo*. *United States v. Dembry*, 535 F.3d 798, 800 (8th Cir. 2008).

The Fourth Amendment prohibits "unreasonable searches and seizures." "A traffic stop constitutes a seizure of [a] vehicle's occupants, including any passengers." *United States v. Sanchez*, 572 F.3d 475, 478 (8th Cir. 2009), *citing Brendlin v. California*, 551 U.S. 249, 255-57 (2007). A traffic stop "must be supported by reasonable suspicion or probable cause." *United States v. Houston*, 548 F.3d 1151, 1153 (8th Cir. 2008). "A law enforcement officer has reasonable suspicion when the officer is aware of 'particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant suspicion that a crime is being committed.'" *Id.* "Any traffic violation, however minor, provides probable cause for a traffic stop." *United States v. Wright*, 512 F.3d 466, 471 (8th Cir. 2008) (citation and internal quotes omitted). "The determination of whether probable cause," or reasonable suspicion, "existed is not to be made with the vision of hindsight, but instead by looking to what the officer reasonably knew at the time." *See United States v. Sanders*, 196 F.3d 910, 913 (8th Cir. 1999). Even an officer's incomplete initial observations may give reasonable suspicion for a traffic stop. *United States v. Smart*, 393 F.3d 767, 770-71 (8th Cir. 2005). Mistakes of law or fact, if objectively reasonable, may still justify a valid stop. *Id.*

When the officers initially observed and stopped the SUV, it did not bear license plates, and they could not see the In Transit sticker. Vehicles without license plates or In Transit stickers are illegal in Nebraska. **Neb. Rev. Stat. § 60-399 (2010)** ("[N]o person shall operate . . . a motor vehicle . . . on the highways unless such motor vehicle or trailer has displayed the proper number of plates as required by the Motor Vehicle Registration Act."); **§ 60-376** (substituting a valid In Transit sticker for the license plate requirement for newly purchased vehicles). Although the officers were mistaken about the SUV's registration status, their actions were objectively reasonable

because they could not then see the In Transit sticker. The officers had a reasonable suspicion for a traffic stop.

Nevertheless,"[a] constitutionally permissible traffic stop can become unlawful . . . 'if it is prolonged beyond the time reasonably required to complete' its purpose." *United States v. Peralez*, 526 F.3d 1115, 1119 (8th Cir. 2005), *citing Illinois v. Caballes*, 543 U.S. 405, 407 (2005). Hollins argues that once the officer saw the sticker (while approaching the SUV), the reasonable suspicion for the stop vanished, and the officer could not continue to detain the SUV's occupants. *See United States v. Watts*, 7 F.3d 122, 126 (8th Cir. 1993).

In the *United States v. Clayborn*, 339 F.3d 700 (8th Cir. 2003), a detective stopped a defendant for driving without license plates. *Id.* at 701. The detective did not see the temporary tag on the vehicle as he approached, but the defendant immediately told the officer that the tag was displayed on the rear window. *Id.* Even after being told of the tag, the officer requested the defendant's registration papers, insurance card, and driver's license. *Id.* Discovering that the defendant was driving with a suspended license, the detective arrested him. *Id.* The subsequent search of the car found a loaded 9 mm pistol, live rounds of ammunition, and several packages of marijuana. *Id.* The defendant moved to suppress, arguing that the detective should never have asked for his license because the traffic stop ended when the detective knew that he had a temporary tag. *Id.* This court disagreed, holding that the detective's request for registration papers and identification "was reasonably related to confirming the vehicle's registration status and explaining the lack of plates." *Id.* at 702. This court has "consistently held that '[a] reasonable investigation following a justifiable traffic stop may include asking for the driver's license and registration." *Id.* at 702, *quoting United States v. Allegree*, 175 F.3d 648, 650 (8th Cir. 1999) (alteration in original); *see also United States v. Smart*, 393 F.3d 767, 771 (8th Cir. 2005); *United States v. Dexter*, 165 F.3d 1120, 1126 (7th Cir. 1999) ("Asking for a vehicle's registration papers is clearly a legitimate way to verify a vehicle's

registration status."). Hollins does not provide any direct authority to support his argument, instead relying on three state court cases and *United States v. McSwain*, 29 F.3d 558 (10th Cir. 1994). *See also* **State v. Childs**, 495 N.W.2d 475, 481-82 (Neb. 1993); **State v. Chatton**, 463 N.E.2d 1237, 1240-41 (Ohio 1984), *superseded by statute as recognized in* **United States v. Elmore**, 304 F.3d 557, 561 n.1 (6th Cir. 2002); **State v. Farley**, 775 P.2d 835, 846 (Or. 1989) (basing its holding solely on Oregon statute). None of these cases is persuasive in light of this court's direct authority.

Here, the officer did not see any plates or stickers, so he stopped Hollins' vehicle. Only after shining his spotlight, exiting his car, and approaching the SUV did he see the In Transit sticker. Even then, it was not immediately verifiable as a valid sticker. The officer did not see its expiration date, and his experience taught him that even facially valid stickers are not *legally* valid (since illegally sold and distributed In Transit stickers are relatively common). He then conducted a reasonable investigation by requesting the driver's license, insurance card, and registration. The initial traffic stop and the officer's limited inquiry—which led to the search and Hollins' arrest—were constitutionally valid.

The judgment of the district court is affirmed.

———————————————