# United States Court of Appeals

## For the Eighth Circuit

_____

No. 18-2747

_____

United States of America

*Plaintiff - Appellee*

v.

Devion L. Williams

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: April 17, 2019
Filed: July 3, 2019

_____

Before SHEPHERD, MELLOY, and GRASZ, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Devion Williams entered a conditional guilty plea to being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), and was sentenced to 112 months imprisonment. Williams now appeals the district court's[1]

_____

[1]The Honorable David Gregory Kays, United States District Judge for the Western District of Missouri, adopting the report and recommendation of the Honorable Robert E. Larsen, United States Magistrate Judge for the Western District of Missouri.

denial of his motion to suppress, arguing that the search that revealed the presence of the firearm was based on a police officer's unreasonable mistaken belief that Williams had been in a stolen vehicle and occurred after officers unreasonably prolonged an investigatory detention. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

On July 7, 2016, Kansas City Police Officer Justin Palmer, working undercover investigating reports of stolen automobiles, was patrolling a high-crime area where he had previously located or recovered stolen automobiles. That morning, Palmer had printed out and reviewed department "hot sheets," which listed the vehicles reported stolen in the Kansas City metropolitan area with each car's make, model, color, and year, utilizing abbreviations to refer to the specific car model. While canvassing, Officer Palmer observed a purple Dodge Challenger parked at an address that had been active in other recent crimes. He checked the "hot sheets," which listed the purple Challenger as stolen. He subsequently confirmed, based on the last four digits of the VIN number, that the vehicle had been stolen from a car dealership.

Officer Palmer called a second undercover officer in the area, who took over surveillance of the purple Challenger. Officer Palmer advised the other undercover officer that a red Dodge Challenger had also been stolen from the same dealership as the purple Challenger. However, this information was inaccurate; the second stolen vehicle was a red Dodge Charger, not a red Dodge Challenger. Officer Palmer later testified that he misread the "hot sheet" when he had checked it that morning and believed that the stolen vehicle was a red Challenger. After the second officer took over surveillance of the purple Challenger, he noticed a red Challenger pull up beside it, tap its breaks, and stop for roughly five seconds. The officer notified Officer Palmer, who then began conducting surveillance on the red Challenger.

Officer Palmer followed the red Challenger until it pulled into the driveway of a nearby residence. At this point, Officer Palmer asked for the assistance of officers in a marked patrol vehicle. When the patrol vehicle arrived, Officer Palmer drove by the red Challenger one more time and observed a man leaning into the driver's seat of the car toward the middle console. He also observed several individuals standing on the front porch of the residence. One officer exited the patrol car and placed Williams and another individual, both of whom were standing near the red Challenger, in handcuffs for officer safety. The officer also handcuffed a third individual at the scene. The patrol officers then checked the VIN number for the red Challenger and determined that it was not stolen. The officers also ran a license plate check, which revealed that the car was not stolen but that it had temporary tags that had expired.

Shortly after running the license plate and the VIN number check, one patrol officer observed a small plastic baggie on the ground by the second individual who had been near the red Challenger. The baggie contained an off-white powdery substance that the officer believed to be powder cocaine. Another officer noticed two other baggies on the ground, also near the second individual. These baggies contained a green leafy substance and an off-white rock-like substance, which officers believed to be marijuana and crack cocaine, respectively. The officers also observed a handgun in plain view in the passenger seat of the red Challenger. The officers opened the passenger door and removed the handgun. The officers determined the handgun was stolen after running a check on the gun's serial number. The officers asked who owned the vehicle, and no one—including Williams, the two other handcuffed men, or the individuals on the porch of the home—identified the owner. Williams told officers that the car had been in the driveway all day and that he had gotten the car earlier in the day from a woman whose name he did not know. As Officer Palmer had observed the car in transit, the patrol officers understood Williams's statement to be untruthful. Based on the lack of clear information about the ownership of the red Challenger, the officers decided to tow it and performed an inventory search. This search revealed a second handgun, loaded with 22 rounds of

ammunition, wedged in between the driver's seat and the center console. Later DNA testing connected Williams to the second firearm and the crack cocaine. Williams was charged as a felon in possession of a firearm based on this second recovered firearm.

Williams filed a motion to suppress. The magistrate judge issued a report and recommendation, recommending that the district court deny the motion. The magistrate judge determined that Officer Palmer's mistaken belief that the red Dodge Challenger was stolen was objectively reasonable, given the similarities between the abbreviations for a Dodge Challenger (CHL or CHR) and a Dodge Charger (CHA or CHR) on the hot sheets and that the red Challenger had briefly stopped next to a stolen vehicle. The magistrate judge further concluded that the patrol officers had reasonable suspicion to approach the vehicle and perform an investigatory stop and that, once they observed narcotics, they had probable cause to remove the firearm in plain view and run its serial number. Based on the determination that the firearm was stolen and the fact that the patrol officers were unable to determine who owned the vehicle, the magistrate judge determined the officers made the permissible decision to tow the vehicle and were lawfully permitted to perform the inventory search that revealed the presence of the second firearm.

The district court adopted the report and recommendation over Williams's objections, agreeing that the officers had reasonable suspicion to conduct a car check, the mistaken belief that the vehicle was stolen was objectively reasonable, and that the officers had probable cause to search the vehicle after deciding to tow it. Williams then entered a conditional guilty plea, reserving the right to challenge the suppression ruling, and the district court sentenced him to 112 months imprisonment. This appeal follows.

Williams argues the district court erred in denying his motion to suppress because the officer made an objectively unreasonable mistake in identifying the red Challenger as stolen and because the investigatory stop should have concluded by the time officers discovered the contraband that gave rise to the decision to tow the Challenger and the subsequent inventory search. In reviewing the denial of a motion to suppress, "[a] mixed standard of review applies . . . . We review the district court's findings of fact for clear error and the denial of the suppression motion de novo."[2] United States v. Smith, 820 F.3d 356, 359 (8th Cir. 2016) (internal quotation marks omitted).

Williams first challenges the reasonableness of Officer Palmer's mistaken belief that the red Challenger was listed as stolen on the "hot sheets." "A traffic stop is a seizure within the meaning of the Fourth Amendment and, as such, must be supported by reasonable suspicion or probable cause." United States v. Houston, 548 F.3d 1151, 1153 (8th Cir. 2008). "A law enforcement officer has reasonable suspicion [to conduct an investigatory stop] when the officer is aware of particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant suspicion that a crime is being committed." United States v. Hollins, 685 F.3d 703, 706 (8th Cir. 2012) (internal quotation marks omitted). "Mistakes of law or fact, if objectively reasonable, may still justify a valid stop." Id. "[I]n mistake cases the question is simply whether the mistake, whether of law or of fact, was an objectively reasonable one." United States v. Smart, 393

---

[2]The government urges us to apply a plain-error standard of review based on Williams's purported failure to make specific objections, pursuant to 28 U.S.C. § 636(b)(1), to the magistrate judge's report and recommendation. See Thompson v. Nix, 897 F.2d 356, 357 (8th Cir. 1990) (per curiam) (reviewing for plain error where no objections to report and recommendation were made). Having reviewed Williams's 20-page objection to the report and recommendation, we are satisfied that Williams made specific objections raising the same issues that he raises on appeal so as to preserve his arguments for appeal.

F.3d 767, 770 (8th Cir. 2005). This determination "is not to be made with the vision of hindsight, but instead by looking to what the officer reasonably knew at the time." Id. (internal quotation marks omitted).

We conclude that Officer Palmer's mistaken belief that the red Challenger was stolen based upon his misreading of the "hot sheets" was objectively reasonable. Although Officer Palmer admitted he did not double check the "hot sheets" to verify that the red Challenger was listed as stolen, the facts, when considered from "what [Officer Palmer] reasonably knew at the time," see id., show the reasonableness of his mistake: a Dodge Charger and Dodge Challenger have similar names and share similar abbreviations on the "hot sheets"; the red Challenger was observed stopping briefly next to the purple Challenger, which had been verified as stolen; Officer Palmer learned the purple Challenger had been stolen from a car dealership, increasing the likelihood that another car of the same make and model could also have been stolen; both vehicles were spotted in a high-crime area where Officer Palmer had previously located or recovered stolen vehicles; and the red Challenger was in transit, not stationary like the purple Challenger, which provided less of an opportunity to verify the information on the "hot sheet" before starting to pursue it and conduct surveillance. The district court thus did not err in concluding that Officer Palmer's mistake was objectively reasonable and provided sufficient reasonable suspicion to perform an investigatory stop.

Williams next argues that, once the officers determined that the red Challenger was not stolen, the purpose of the investigatory stop was completed, and any extension of the stop beyond this point was unlawful. Again, we disagree. "[A] constitutionally permissible traffic stop can become unlawful . . . if it is prolonged beyond the time reasonably required to complete its purpose." Hollins, 685 F.3d at 706 (internal quotation marks omitted). Once "the purpose of the traffic stop is complete[,] further detention of the driver or vehicle would be unreasonable, unless something that occurred during the traffic stop generated the necessary reasonable suspicion to justify further detention or unless the continued encounter is

consensual." United States v. Quintero-Felix, 714 F.3d 563, 567 (8th Cir. 2013) (internal quotation marks omitted). Determining whether the length of a specific detention is reasonable is a fact-intensive inquiry. Id.

Williams's argument that the stop should have concluded immediately upon the officers' determination that the vehicle was not stolen ignores the length of time that elapsed between the time the officers ran the check on the vehicle and when they observed the narcotics. At the suppression hearing, an officer testified that, at most, two minutes elapsed. This length of time does not amount to an unreasonable delay in terminating the investigative stop, particularly where the officers had increasing suspicions that criminal activity was afoot. See Arizona v. Johnson, 555 U.S. 323, 333 (2009) ("An officer's inquiries into matters unrelated to the justification for the traffic stop, this Court has made plain, do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop."). Although the officers' suspicion that the vehicle was stolen had dissipated, the vehicle's expired tags, the evasive answers of the people at the scene, the misrepresentations that the car had been parked at the house all day, and the unwillingness of any person at the scene to identify the owner of the vehicle provided officers with the reasonable suspicion that criminal activity, independent of vehicle theft, was afoot. See United States v. Watts, 7 F.3d 122, 126 (8th Cir. 1993) ("The mere fact that the officers' original ground for stopping [defendants] dissipated does not prevent them from continuing their investigative stop based on new facts creating a reasonable articulable suspicion of criminal activity."). Because the officers did not impermissibly extend the stop, the observation of narcotics and the firearm, coupled with the inability to identify the vehicle's owner, provided the officers with probable cause to tow the vehicle and perform an inventory search. The district court thus did not err in concluding that the officers had a legally permissible basis to tow and search the vehicle, revealing the firearm that gave rise to the charge against Williams.

## III.

For the foregoing reasons, we affirm.

_____