# United States Court of Appeals

## For the Eighth Circuit

_____

No. 20-1020

_____

United States of America

*Plaintiff - Appellee*

v.

Anthony James Hanel

*Defendant - Appellant*

_____

No. 20-1023

_____

United States of America

*Plaintiff - Appellee*

v.

Courtney Laparele Clark

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: November 20, 2020
Filed: April 2, 2021

_____

Before BENTON, ERICKSON, and GRASZ, Circuit Judges.
_____

GRASZ, Circuit Judge.

Based on evidence obtained during a traffic stop, the government filed charges against Anthony Hanel and Courtney Clark for illegally possessing guns and credit card counterfeiting equipment. Hanel and Clark sought to suppress all evidence obtained during what they claimed was an illegal search and seizure. The district court[1] denied those motions after concluding that the officers had reasonable suspicion of unlawful conduct when they stopped the vehicle. We affirm.

## I. Background

Around 2:30 a.m., during a routine patrol of what they considered a high-crime area, Omaha Police Officers John Harney and Cory Buckley noticed a blue Dodge Durango with Minnesota license plates exiting a parking lot. Officer Buckley saw that the passenger was not wearing a seatbelt.

The officers followed the Durango onto an interstate highway, and Officer Buckley used the in-cruiser computer to try to verify the vehicle's license plates using the National Crime Information Center ("NCIC") database. His first search in NCIC returned no record. Officer Buckley verified the license plate number and reran it. This second search returned a response of "not on file." Officer Buckley then asked dispatchers to check the license plate in the NCIC database. Simultaneously, the officers saw the Durango make what they believed to be an improper lane change. Based on that lane change, they pulled over the vehicle. As

_____

[1]The Honorable John M. Gerrard, Chief Judge, United States District Court for the District of Nebraska, adopting the findings and recommendations of the Honorable Michael D. Nelson, United States Magistrate Judge for the District of Nebraska.

the officers exited their squad car, the dispatchers reported there was no valid registration for the vehicle.

Officer Harney approached the Durango's driver's side to speak with Clark. Officer Buckley approached the passenger's side to speak with Hanel, who refused to identify himself. Based on that refusal and other suspicious behavior, the officers requested a portable fingerprint identification machine and a drug dog. The dog indicated that narcotics were in the vehicle. The officers then searched the Durango and detained Hanel and Clark.

Based on evidence obtained during that traffic stop, a grand jury indicted both Hanel and Clark for illegally possessing counterfeit access-device making equipment, possessing a firearm with an obliterated serial number, and possessing counterfeit and unauthorized access devices. It also indicted Hanel for illegally possessing a firearm as a felon.

Hanel and Clark both moved to suppress all evidence obtained during the traffic stop. They argued that the stop violated the Fourth Amendment to the United States Constitution because the officers lacked probable cause or reasonable suspicion. Specifically, they argued that the stated reason for the stop—Clark's lane change—did not violate Nebraska law. While conceding that the lane change was legal, the government argued that the officers' mistake was objectively reasonable. The magistrate judge concluded otherwise. However, the magistrate judge recommended denying both motions after concluding the officers had reasonable suspicion that the Durango lacked proper registration.

The district court adopted the magistrate judge's findings and recommendations, but it also explained its own rationale for why the officers' belief about the registration status justified the stop. It found that the officers were "competent in the use of their laptop and in accessing the NCIC database" and that the database was sufficiently reliable "to allow the officers to have a reasonable suspicion that the Durango might not have been registered[.]" Relying on *United*

*States v. Hollins*, 685 F.3d 703, 706 (2012), the district court concluded this sufficiently justified the stop because "an officer's initial incomplete observations may provide reasonable suspicion for the officer to stop a vehicle and investigate further." After the district court denied their motions to suppress, Hanel and Clark both pled guilty to the illegal possession of counterfeit access-device making equipment, and Hanel also pled guilty to possession of a firearm as a felon. After sentencing, Hanel and Clark challenged the denials of their motions to suppress, arguing the stop was unconstitutional.[2] We consolidated their appeals.

## II. Analysis

"In an appeal from a district court's denial of a motion to suppress evidence, this court reviews factual findings for clear error, and questions of constitutional law de novo." *United States v. Hollins*, 685 F.3d 703, 705 (8th Cir. 2012).

The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. Const. amend. IV. "A traffic stop constitutes a seizure of [a] vehicle's occupants, including any passengers." *United States v. Sanchez*, 572 F.3d 475, 478 (8th Cir. 2009). For a traffic stop to be constitutional under the Fourth Amendment, it "must be supported by reasonable suspicion or probable cause." *United States v. Houston*, 548 F.3d 1151, 1153 (8th Cir. 2008). "A law enforcement officer has reasonable suspicion when the officer is aware of 'particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant suspicion that a crime is being committed.'" *Id.* (quoting *United States v. Martin*, 706 F.2d 263, 265 (8th Cir. 1983)). "Any traffic violation, however minor, provides probable cause for a traffic stop." *United States v. Bloomfield*, 40 F.3d 910, 915 (8th Cir. 1994).

---

[2]Neither Clark nor Hanel challenge the constitutionality of the search of the vehicle performed after the stop. Only the stop itself is at issue in this appeal.

To determine if probable cause or reasonable suspicion existed, we look at what the officers "reasonably knew at the time," rather than looking back with the benefit of hindsight. *Hollins*, 685 F.3d at 706. But "[m]istakes of law or fact, if objectively reasonable, may still justify a valid stop." *Id.* Furthermore, "subjective intent is not determinative in deciding whether the stop was reasonable." *United States v. Mallari*, 334 F.3d 765, 767 (8th Cir. 2003). "[E]ven if an officer invokes the wrong offense" at the time, probable cause may still support the stop if an officer has an objective basis to make it. *United States v. Demilia*, 771 F.3d 1051, 1054–55 (8th Cir. 2014).

Applying these principles, we affirm the district court's judgment. At the time they initiated the traffic stop, the officers had grounds for reasonable suspicion that the Durango lacked proper registration in violation of Nebraska law. *See* Neb. Rev. Stat. § 60-362 (providing that no unregistered motor vehicle may be operated on Nebraska's highways); Neb. Rev. Stat. § 60-3,170 (providing that a violation of the Motor Vehicle Registration Act is a Class III misdemeanor). Although the officers cited the lane change as their reason for stopping the vehicle, they already had an objective basis to stop it when the first two NCIC searches failed to indicate proper registration. *See Demilia*, 771 F.3d at 1054–55 (reversing grants of motions to suppress when one traffic offense could provide an objectively reasonable basis for the stop even though the officer relied on the wrong offense to justify it); *United States v. Stephens*, 350 F.3d 778, 779–80 (8th Cir. 2003) (holding that an inconclusive vehicle dispatch computer check "provided the police with reasonable suspicion to stop the vehicle and investigate whether the vehicle was properly registered"). The fact that dispatchers had yet to report the results of their separate registration search does not change this conclusion. Although the officers later learned that the vehicle was properly registered, the information they had when they stopped the vehicle justified the stop. *See Hollins*, 685 F.3d at 707.

We have previously upheld a traffic stop based on a mistaken belief about a vehicle's registration. In *Hollins*, police officers stopped an SUV that had no license plates. *Id.* at 705. Approaching the SUV, an officer then, for the first time, saw an

apparently valid Nebraska "In Transit" sticker. *Id.* But the officer continued the stop because he could not see the expiration date and knew from experience that In Transit stickers could often be falsified. *Id.* at 706. Ultimately, before the initial officer and his colleagues impounded the vehicle, they found an illegal firearm inside. *Id.* at 705. The driver moved to suppress the firearm, arguing the valid sticker negated reasonable suspicion. *Id.* We rejected that argument, reasoning that "[a]lthough the officers were mistaken . . ., their actions were objectively reasonable because they could not then see the In Transit sticker." *Id.* at 706. And we also concluded that the officers justifiably prolonged the stop after seeing the sticker because "the [initial] officer did not see its expiration date, and his experience taught him that even facially valid stickers" may not be "*legally* valid" given the prevalence of illicit stickers. *Id.* at 707 (emphasis in original).

Similar to the SUV in *Hollins*, the Durango was properly registered despite the officers' suspicions. But the officers had experience searching the NCIC database and had not previously encountered any problem running Minnesota plates. It is objectively reasonable, then, that the two inconclusive results could lead the officers to believe that the Durango violated Nebraska law by lacking proper registration. The officers justifiably stopped the Durango to investigate its registration status.

Our holding should not be interpreted as justifying all warrantless vehicle stops based on ambiguous results from data searches. Rather, we emphasize our holding depends on the express factual findings that: (1) the NCIC database was not inherently unreliable; (2) the officers were competent in the use of their laptop; and (3) the officers were competent in accessing the NCIC database. Hanel and Clark have failed to convince us that the district court clearly erred in reaching those factual findings. Under these circumstances, the officers had reasonable suspicion to initiate the stop.

## III.  Conclusion

For the foregoing reasons, we affirm the judgment of the district court.

_____