# United States Court of Appeals

## For the Eighth Circuit

_____

No. 20-2936

_____

United States of America

*Plaintiff - Appellee*

v.

Tevin Jay Maurstad

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: December 17, 2021
Filed: June 3, 2022

_____

Before SMITH, Chief Judge, GRUENDER and KOBES, Circuit Judges.

_____

KOBES, Circuit Judge.

Tevin Maurstad was convicted of multiple drug and gun crimes[1] after the district court[2] denied his motion to suppress.  The court sentenced him to 270 months in prison followed by 5 years of supervised release.  He appeals, arguing that the district court erred by:  (1) denying his motion to suppress; (2) finding there was sufficient evidence to convict him; and (3) imposing an enhancement for obstruction of justice.  We affirm.

I.

Three different encounters with law enforcement are relevant to this appeal. First, in August 2016, an officer pulled Maurstad over for driving a car with illegally tinted windows.  Maurstad didn't have a valid license, and the officer smelled marijuana coming from the car.  Maurstad admitted that he smoked marijuana 20 minutes before being pulled over and had some in the car.  The officer asked Maurstad to get out, and searched the car.  In the glove box, the officer found the marijuana; in the engine compartment, he found a gun wrapped in a t-shirt, three large packages of meth wrapped in another t-shirt, a digital scale, three cell phones, and about $1,000 in cash.  Investigators found Maurstad's DNA on the gun, and Morningstar Webster,[3] his co-defendant, confirmed that Maurstad owned the gun. Based on this evidence, Maurstad was charged with conspiracy to possess meth with intent to distribute, possession of meth with intent to distribute, possession of a firearm in furtherance of a drug trafficking crime, and being a felon in possession of a firearm.

---

[1]Conspiracy to possess with intent to distribute meth, 21 U.S.C. §§ 846, 841(a)(1); two counts of possession with intent to distribute meth, 21 U.S.C. § 841(a)(1); possession of a firearm in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c)(1)(A)(i); and felon in possession of a firearm and ammunition, 18 U.S.C. § 922(g)(1).

[2]The Honorable Susan Richard Nelson, United States District Judge for the District of Minnesota.

[3]Webster was charged as a member of the conspiracy to possess and distribute meth.

Maurstad was pulled over again in January 2018. This time, an officer noticed that Maurstad's car didn't have a front or rear license plate. After following him for a while, the officer's radar and a roadside speedometer showed that Maurstad was speeding, so the officer pulled him over. When the car stopped, the officer saw that the car had a temporary license taped to the window, but proceeded with the stop based on the speeding violation. Once again, Maurstad did not have a valid license, and the officer noticed that his passenger was shaking uncontrollably, so he asked Maurstad to get out of the car. The officer asked if Maurstad had any weapons. Maurstad said no and began voluntarily removing things from his pockets. He then consented to a pat-down for weapons, and the officer felt a hard object that he believed could be a weapon. It turned out to be a bag of oxycodone pills, which Maurstad admitted he did not have a prescription for. The officer searched the car and noticed that the molding and trim of the doors was broken and that there was a bulge in the driver's side door. The officer pried the door panel open and found two large packages of meth. As a result of this stop, Maurstad was charged with possession with intent to distribute meth.

Finally, in February 2018, officers obtained a search warrant for a storage unit in Maurstad's name. The warrant was based in part on texts Maurstad sent from jail instructing others to pay the storage unit bill so he didn't "lose everything" and stating that he was "the only one with a key." Officers found 86 rounds of ammunition and 4 magazines. Maurstad was charged with possessing ammunition as a felon.

Maurstad filed a motion to suppress the evidence from the two traffic stops and, after a hearing, the magistrate judge[4] recommended denying it. The district court agreed and denied the motion to suppress. At this point, Maurstad searched the discovery materials for information about potential witnesses. He found the names, addresses, and birthdays of five people he believed cooperated with officers

---

[4]The Honorable Katherine M. Menendez, then Magistrate Judge for the District of Minnesota, now United States District Judge for the District of Minnesota.

against Webster, his co-defendant in the conspiracy charge. He then sent this information via Facebook message to a member of his gang[5] and told her to pass it along to others. His message said "[e]verybody I named was willing to come to court to testify against my Co-defendant . . . I juss [sic] thought I'd let you know so they can get exposed . . . [a]n [sic] at the end of the day is 'public information' but the Feds try to protect their 'Witnesses.'"

The district court held a bench trial and found Maurstad guilty on all six counts. At sentencing, the district court imposed a two-level enhancement for obstruction of justice, finding that the Facebook message was an attempt to intimidate witnesses. Maurstad was sentenced to 270 months in prison and 5 years of supervised release. He now appeals.

## II.

Maurstad first challenges the district court's denial of his motion to suppress the evidence from the two traffic stops. "We review the denial of a motion to suppress *de novo* but the underlying factual determinations for clear error, giving due weight to inferences drawn by law enforcement officials." *United States v. Smith*, 789 F.3d 923, 928 (8th Cir. 2015) (citation omitted).

The Fourth Amendment protects against unreasonable searches and seizures. U.S. Const. amend. IV. A traffic stop is a seizure, so it must be supported by reasonable suspicion or probable cause. *United States v. Hollins*, 685 F.3d 703, 705–06 (8th Cir. 2012). But "[a]ny traffic violation, however minor, provides probable cause for a traffic stop." *Id.* at 706 (citation omitted). And objectively reasonable mistakes of law or fact justify a stop. *Id.*

---

[5]Maurstad is a high-ranking member of the Native Mob, a well-established gang.

Maurstad argues that the officers did not have reasonable suspicion to stop him on either occasion, so all evidence obtained during the traffic stops should have been excluded as fruit of the poisonous tree. We disagree.

The August 2016 stop was initiated because an officer believed that the tint on Maurstad's windows violated state law. *See* Minn. Stat. § 169.71, subd. 4. Maurstad points out that the tint was not illegal because it fell into an exception for manufacturer-tinted windows. As a result, he argues, there was no reasonable suspicion to pull him over. But the officer's observation was right—the windows were too dark under the statute. Although they were exempt and therefore lawful, there was no way for the officer to know that before pulling Maurstad over, so his mistake was objectively reasonable. *See Hollins*, 685 F.3d at 706. The district court did not err in finding that the officer had reasonable suspicion to stop Maurstad in August 2016.

Maurstad caught an officer's attention in January 2018 because his car didn't have license plates, but he was ultimately stopped for speeding. Maurstad challenges both of these reasons for stopping him. First, he claims that because he had a temporary registration, the officer's reason for stopping him was invalid. But, as above, the officer's mistake was objectively reasonable—he could not see the temporary registration when he started following Maurstad. *See id.* (upholding traffic stop where officer mistakenly believed the car did not have valid registration). Even if the officer's mistake was not reasonable, the speeding violation alone provided reasonable suspicion for the stop. Maurstad suggests that the radar gun was inaccurate and could not support reasonable suspicion. But he fails to point to any evidence of that in the record, and doesn't offer any evidence that the roadside speedometer was similarly inaccurate. Given that the officer had two independent grounds for the stop, both of which created reasonable suspicion, the district court properly denied the motion to suppress evidence from this stop as well.

-5-

III.

Maurstad next argues that there was insufficient evidence to support five of his six convictions.[6]  "We review the sufficiency of the evidence de novo, viewing evidence in the light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict."  *United States v. Casteel*, 717 F.3d 635, 644 (8th Cir. 2013) (citation omitted).  We will reverse only if no reasonable jury could have found Maurstad guilty beyond a reasonable doubt.  *Id.*

A.

Maurstad challenges his convictions for possession with intent to distribute meth, felon in possession of a firearm, and possession of a firearm in furtherance of a drug trafficking crime.  These convictions are all based on evidence from the August 2016 traffic stop.

To prove possession of meth with intent to distribute, the Government needed to show that Maurstad (1) knowingly possessed meth and (2) intended to distribute it.  *United States v. Thompson*, 686 F.3d 575, 583 (8th Cir. 2012).  Maurstad argues that the evidence was insufficient to prove that he knew there were drugs in the car. The district court relied on the fact that he had control over the car where the meth was hidden.  It also noted that the meth was wrapped in a similar t-shirt as the gun, which Webster admitted belonged to Maurstad, and both were stored close together in the engine compartment.

---

[6]Maurstad claims to challenge all six of his convictions.  But because he makes no arguments challenging his conviction for conspiracy to possess with intent to distribute meth, we do not address it.  *See United States v. Ruzicka*, 988 F.3d 997, 1006 (8th Cir. 2021) ("We do not consider claims that a party fails meaningfully to develop or argue on appeal." (citation omitted)).

Maurstad raises two arguments on this point. First, he claims that his cooperative demeanor during the stop demonstrates that he did not know about the large quantity of meth in the car. He says that admitting to having marijuana in the car demonstrated his honesty and cooperation—traits that someone trafficking a large amount of drugs wouldn't have. This argument is unpersuasive. Maurstad's cooperation with the officer has no bearing on whether he knew there was meth in the car—it's entirely possible that he was cooperative to avoid raising suspicion and being charged with the more serious meth offense. And, even if it did indicate honesty, there was other evidence sufficient to establish knowledge.

Maurstad also argues that the testimony of his co-defendant, Webster, undermines his conviction. Webster testified that she placed the meth in the engine compartment without Maurstad's knowledge. But the district court discredited Webster's testimony based on her close relationship with Maurstad and her demeanor on cross-examination. Since "a credibility determination is virtually unreviewable on appeal," *United States v. Holly*, 983 F.3d 361, 363 (8th Cir. 2020) (citation omitted), and Maurstad provides no evidence to establish that the district court erred in its finding, this argument fails as well. There was sufficient evidence for the court to find Maurstad guilty of possession of meth with intent to distribute.

Next, Maurstad challenges his conviction for possessing a firearm as a felon. This conviction requires proof that he (1) knew that he was previously convicted of a felony; (2) knowingly possessed a gun; and (3) the gun had been in or affected interstate commerce. *United States v. Harris*, 964 F.3d 718, 723 (8th Cir. 2020). Maurstad argues that the Government failed to prove he knowingly possessed the gun. In support, he points out that the Government's witness could not say with certainty that Maurstad's DNA wasn't transferred onto the gun from another source. But the Government's witness testified that when large amounts of DNA are found on an object, like in this case, it is usually due to direct contact. The court relied on this, Webster's later statement that the gun was Maurstad's, and the fact that the gun was wrapped in a similar t-shirt as the drugs. This evidence is sufficient to support Maurstad's felon in possession of a firearm conviction.

Lastly, Maurstad argues that the evidence supporting his conviction for possession of a firearm in furtherance of a drug trafficking crime was insufficient. This conviction requires proof that (1) he committed a drug trafficking crime; and (2) he knowingly possessed a gun in furtherance of that crime. *United States v. Saddler*, 538 F.3d 879, 888 (8th Cir. 2008). Maurstad challenges the second element, claiming that the Government failed to show any nexus between his possession of the gun and the drug crime. It's true that simply possessing a gun and drugs simultaneously is not enough. *United States v. Sanchez-Garcia*, 461 F.3d 939, 946 (8th Cir. 2006). But the district court found that the transportation of the gun and the drugs together, wrapped in similar t-shirts, along with law enforcement testimony that guns further drug trafficking activities, established a nexus between the possession of the gun and the drug crime. That is sufficient under our precedent. *See United States v. Ellis*, 817 F.3d 570, 578–79 (8th Cir. 2016).

B.

Maurstad next challenges his conviction for possession with intent to distribute meth, which arose out of the January 2018 traffic stop. Maurstad again argues that the evidence was insufficient to prove that he knowingly possessed the drugs found during this stop. The court found that the evidence supported an inference of knowledge because the drugs were in the driver's-side door of Maurstad's newly purchased car, which he was driving at the time of the traffic stop. *See United States v. Dooley*, 580 F.3d 682, 686 (8th Cir. 2009) ("[D]efendant's control over the area where the weapon was found—which, in the usual case, gives rise to a strong inference of knowledge."). Because this is a reasonable inference, the evidence was sufficient to show that he knowingly possessed the drugs.

C.

Finally, Maurstad challenges the sufficiency of the evidence supporting his conviction for possessing ammunition as a felon, which stems from the February 2018 search of his storage unit. This conviction requires proof that (1) Maurstad

knew he was a felon; (2) he knowingly possessed the ammunition; and (3) the ammunition traveled in or affected interstate commerce. *United States v. Obi*, 25 F.4th 574, 577 (8th Cir. 2022); 18 U.S.C. § 922(g)(1). Maurstad claims that the Government failed to prove beyond a reasonable doubt that he constructively possessed the ammunition found in his storage locker. The district court found that Maurstad exercised sole control over the unit because it was in his name, he typically paid the rent, and he had the only key. The court held that this strongly supported the inference that Maurstad knew about the unit's contents, including the ammunition. Because it was reasonable for the court to find that Maurstad knowingly possessed the ammunition, we affirm this conviction.

IV.

Maurstad argues that the district court erred by applying an obstruction of justice enhancement at sentencing. We review the court's interpretation and application of the Guidelines *de novo*, and its factual findings for clear error. *United States v. Sanders*, 4 F.4th 672, 678 (8th Cir. 2021). And we give "great deference" to a district court's decision to apply an enhancement for obstruction of justice. *Id.* (citation omitted).

U.S.S.G. § 3C1.1 allows for a two-level enhancement when the defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice." This includes "threatening, intimidating, or otherwise unlawfully influencing" a witness. § 3C1.1 cmt. n.4. The district court found that by sharing personal information about potential witnesses, Maurstad intended to intimidate them. It noted that disseminating witness names and retaliating against them are common practices of the Native Mob, and Maurstad's messages sharing the names, addresses, and birthdays of potential witnesses were consistent with that practice. The court held that the Government proved intent to obstruct justice by a preponderance of the evidence.

Maurstad argues that he did not intend to intimidate the witnesses; he simply wanted to notify his friends that these people were cooperating with law enforcement

so they could protect their criminal enterprises. He points to his message, which just said he wanted the witnesses to "get exposed." And the Government's witness testified that the Native Mob shares the names of cooperators "to protect other members from possibly working with them or knowing their business."

But the record supports the district court's finding that Maurstad intended to obstruct justice. As the district court noted, the Guidelines have a broad view of obstruction—it can vary in nature and seriousness, and does not require a direct threat. *See* U.S.S.G. § 3C1.1 cmt. nn.3, 4(A). And we held in *United States v. Brisbin* that a defendant's attempt to publicize witness names supports an inference that they intend to intimidate or threaten them. 659 F. App'x. 903, 906–07 (8th Cir. 2016). That inference is bolstered here by the fact that Maurstad publicized not just names, but addresses of the potential witnesses, and by Maurstad's statement that "Feds try to protect their 'Witnesses.'" Given these facts and our deference to the district court's determination, we affirm the application of the enhancement.

V.

We affirm the judgment of the district court.

_____