# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-2543
_____

United States of America

*Plaintiff - Appellee*

v.

Garry Wayne James Behrens

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Southern District of Iowa
_____

Submitted: April 16, 2025
Filed: July 28, 2025
[Unpublished]
_____

Before LOKEN, GRUENDER, and GRASZ, Circuit Judges.
_____

PER CURIAM.

Garry Behrens entered a conditional guilty plea to one count of possession of methamphetamine with intent to distribute and was sentenced to 72 months of

imprisonment. He now appeals the district court's[1] denial of his motion to suppress evidence obtained following a traffic stop. We affirm.

In May 2023, Sergeant Dominic Wheeler of the Muscatine County Sheriff's Office observed a truck traveling ten miles per hour below the speed limit. Wheeler thought the reduced speed could indicate that the driver was impaired, so he followed the truck. During the three miles that Wheeler followed the truck, its speed fluctuated, which Wheeler viewed as another sign of driver impairment. Wheeler then checked the truck's registration and learned the registered owner was a woman who did not have a valid license. At this point, Wheeler could not tell who was driving the truck. Wheeler activated his lights, but the truck did not immediately pull over even though the highway had a shoulder and "there were no conditions that would have prevented the driver from immediately stopping." After Wheeler activated his sirens, the truck pulled into a gas station and parked at an angle near the station's entrance. Wheeler testified that the manner in which the truck parked further increased his suspicion that the driver was impaired or trying to conceal contraband.

Wheeler exited his police vehicle to approach the driver and realized the driver was a male, not the female registered owner. Wheeler asked the driver if he was alright after Wheeler "immediately noticed the driver was nervous, sweaty, had a 'blank stare,' and was slow to react when speaking with him." Wheeler asked additional questions to determine whether the driver was impaired and requested the driver's license, registration, and insurance. The driver could not provide any of those documents, and Behrens, the truck's passenger, also did not have his license. Wheeler learned the driver and Behrens were traveling from Burlington, Iowa, to Buffalo, Iowa, a known drug trafficking route. Wheeler then returned to his squad car to verify the driver's and Behrens's identities and to call for a canine unit. Wheeler initially struggled to pull up the driver's and Behrens's records but

---

[1]The Honorable Stephen H. Locher, United States District Judge for the Southern District of Iowa.

eventually learned neither had a valid license. Fifteen minutes into the stop, the canine unit arrived. Wheeler told the canine officer that "the driver was lethargic, had bloodshot eyes, and was acting weird." The canine alerted on the truck, and Wheeler found a pipe with suspected methamphetamine residue inside. Behrens admitted the pipe belonged to him, and another officer on the scene located a sock filled with methamphetamine in front of the truck. Both the driver and Behrens were then arrested.

Behrens unsuccessfully sought to suppress the physical evidence seized during the stop, his statement about the glass pipe, and other evidence from the stop. On appeal, Behrens argues Wheeler was obligated to end the traffic stop when his reasonable suspicion of unlicensed driving dissipated upon learning the truck's driver was a man and therefore was not the registered owner. We apply a mixed standard of review to a denial of a motion to suppress, reviewing "the district court's findings of fact for clear error and the denial of the suppression motion de novo." *United States v. Williams*, 929 F.3d 539, 543 (8th Cir. 2019) (quoting *United States v. Smith*, 820 F.3d 356, 359 (8th Cir. 2016)). We conclude the district court did not err by denying Behrens's motion. Even if we accept Behrens's argument that an officer may not ask further traffic safety questions and must terminate a traffic stop once reasonable suspicion of a violation dissipates, Wheeler had reasonable suspicion that the driver was impaired by the time he learned the driver was not the registered owner.

The Fourth Amendment prohibits unreasonable searches and seizures. *See* U.S. Const. amend. IV. A traffic stop constitutes a seizure and therefore "must be supported by reasonable suspicion or probable cause." *Williams*, 929 F.3d at 544 (quoting *United States v. Houston*, 548 F.3d 1151, 1153 (8th Cir. 2008)). The "tolerable duration" of a traffic stop "is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop and attend to related safety concerns." *Rodriguez v. United States*, 575 U.S. 348, 354 (2015) (internal citation omitted) (quoting *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)). An officer's authority for the traffic stop "ends when tasks tied to the traffic infraction are—or

reasonably should have been—completed." *Id.* As a result, "[o]nce 'the purpose of the traffic stop is complete[,] further detention of the driver or vehicle would be unreasonable, unless something that occurred during the traffic stop generated the necessary reasonable suspicion to justify further detention.'" *Williams*, 929 F.3d at 544 (second alteration in original) (quoting *United States v. Quintero-Felix*, 714 F.3d 563, 567 (8th Cir. 2013)).

Since the truck's registered owner did not have a valid license and Wheeler could not tell that the driver was not the registered owner, Wheeler had reasonable suspicion that a traffic violation was occurring and could stop the vehicle. *See Kansas v. Glover*, 140 S. Ct. 1183, 1188, 1191 (2020). After Wheeler saw the driver was a man upon approaching the window, not a woman like the registered driver, his reasonable suspicion that the driver had an invalid license dissipated. But just as that reasonable suspicion dissipated, Wheeler's reasonable suspicion that the driver was impaired continued to grow. Once at the driver's window, Wheeler "immediately" saw signs that the driver was impaired. Behrens claims Wheeler should have realized the driver was a man before he spoke to the driver, but even under those circumstances, Wheeler could, at minimum, inform the driver of the original basis for the stop and that he was free to go, at which point Wheeler noticed the physical signs of driver impairment. While we do not resolve the issue of continued detention after reasonable suspicion dissipated, courts that have held that a stop must terminate immediately without further questions still permit an officer to "explain[] to [the vehicle's occupants] the reason for the initial stop," rather than requiring the officer to return to his patrol car and drive off without explanation. *See United States v. Trestyn*, 646 F.3d 732, 744 (10th Cir. 2011). Upon seeing the driver, Wheeler did not smell anything, but he noticed the driver was nervous and sweaty, had bloodshot eyes and a blank stare, and was slow to react when speaking. Moreover, while following the truck, Wheeler had observed the vehicle driving inconsistent speeds, as slow as ten miles per hour below the speed limit, and taking longer than necessary to pull over. The totality of these circumstances provided Wheeler with reasonable suspicion that the driver was impaired by drug use. *See United States v. Campbell-Martin*, 17 F.4th 807, 814–15 (8th Cir. 2021) (concluding

-4-

similar facts supported reasonable suspicion of driving under the influence). As a result, Wheeler could continue to detain the truck, investigate whether the driver was impaired, and request licenses, registration, and proof of insurance. *See id.*; *Williams*, 929 F.3d at 545.

We therefore conclude no Fourth Amendment violation occurred when Wheeler continued the stop after learning the driver was not the registered owner because Wheeler had already obtained information that "generated the necessary reasonable suspicion to justify further detention."[2] *See Williams*, 929 F.3d at 544 (quoting *Quintero-Felix*, 714 F.3d at 567).

We affirm the judgment of the district court.

_____

---

[2]Since reasonable suspicion of the driver's impairment justified the continued stop, we need not address the government's other justifications for the stop or the district court's alternative holding that the drug-filled sock was abandoned.