# United States Court of Appeals
## For the Eighth Circuit

_____

No. 25-1261
_____

United States of America

*Plaintiff - Appellee*

v.

Cedric A. Mitchell

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Western District of Arkansas - Hot Springs
_____

Submitted: December 16, 2025
Filed: March 31, 2026
_____

Before GRUENDER, KELLY, and ERICKSON, Circuit Judges.
_____

ERICKSON, Circuit Judge.

Cedric A. Mitchell entered a conditional guilty plea to possession with intent to distribute more than 500 grams of a mixture or substance containing methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(viii). The district court[1] sentenced Mitchell to a 140-month term of imprisonment. Mitchell

_____

[1]The Honorable Susan O. Hickey, United States District Judge for the Western District of Arkansas.

-1-

appeals the denial of his motion to suppress, asserting there was no lawful basis to initiate a traffic stop based on an ambiguous database message as to insurance coverage. We affirm.

Around midnight on October 1, 2022, Officer William Stockwell saw a white Pontiac driving on a back road in Hot Springs, Arkansas. The hour of the day and the location of the car caught Officer Stockwell's attention. After entering the license plate in the Arkansas Online Insurance Verification System ("AOIVS"), the officer received this response:

> INSURANCE INFORMATION COVERAGE IS: UNCONFIRMED REASON: UNCONFIRMED . . . [AOIVS] WAS UNABLE TO VERIFY INSURANCE FOR THIS VEHICLE. VALID INSURANCE POLICIES MAY EXIST THAT ARE NOT AVAILABLE TO THE SYSTEM AT THIS TIME. PLEASE RELY ON INSURANCE INFORMATION PROVIDED BY DRIVER.

Armed with this information, Officer Stockwell initiated a traffic stop. When the driver was unable to provide proof of registration or insurance, Officer Stockwell ran the identifying information for all three occupants, which showed each had a suspended driver's license and Mitchell was on parole and subject to search. While searching Mitchell, Officer Stockwell found two bags of a white crystalline substance in his front jacket pocket.

Mitchell moved to suppress the drugs found on him, relying in part on an Arkansas Attorney General's opinion stating a court would not likely find probable cause to conduct a traffic stop based on AOIVS reporting a vehicle's insurance information as unconfirmed. Noting the Attorney General's opinion was not binding on the court, the district court concluded that Officer Stockwell had at least reasonable suspicion that the driver had committed a traffic violation.

We apply a mixed standard of review to a district court's denial of a motion to suppress evidence, reviewing factual findings for clear error and the conclusion

of whether the Fourth Amendment was violated *de novo*. United States v. Brown, 60 F. 4th 1179, 1182 (8th Cir. 2022). We will affirm "unless the district court's decision was unsupported by substantial evidence, was based on an erroneous interpretation of applicable law, or was clearly mistaken in light of the entire record." United States v. Murillo-Salgado, 854 F.3d 407, 414 (8th Cir. 2017).

A traffic stop does not violate the Fourth Amendment if it is supported by probable cause or by an articulable and reasonable suspicion of a traffic violation. United States v. Washington, 455 F.3d 824, 826 (8th Cir. 2006). The reasonable suspicion standard is "considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause." Kansas v. Glover, 589 U.S. 376, 380 (2020). When examining reasonable suspicion, courts look to the totality of the circumstances to see if there is a particularized and objective basis for suspecting criminal activity is afoot. United States v. Arvizu, 534 U.S. 266, 273 (2002).

Section 27-22-104 of the Arkansas Code requires all drivers to have valid automobile insurance. Arkansas' insurance scheme also creates an online verification system and a rebuttable presumption that a motor vehicle is uninsured if "[t]he online insurance verification system fails to show current insurance coverage." Ark. Code Ann. § 27-22-104(a)(2)(A)(ii). While the United States contends the statute is sufficient to satisfy the reasonable suspicion standard, we doubt the applicability of a presumption in a state statute is binding on a court weighing a federal constitutional question. We need not reach the issue, however, because this Court has found the existence of reasonable suspicion in similar situations. See United States v. Stephens, 350 F.3d 778, 779-80 (8th Cir. 2003) (finding officer had reasonable suspicion to stop a vehicle when the license plate tags were "not on file"); United States v. Hanel, 993 F.3d 540, 542 (8th Cir. 2021) (same).

In addition, other courts have found that an inconclusive report from a state computer database is sufficient to provide reasonable suspicion to initiate a traffic

stop.  See United States v. Broca-Martinez, 855 F.3d 675, 680 (5th Cir. 2017) (finding reasonable suspicion established where a computer search indicated the vehicle's insurance status was "unconfirmed"); United States v. Cortez-Galaviz, 495 F.3d 1203, 1206-07 (10th Cir. 2007) (determining a database response stating insurance information was "not found" provided reasonable suspicion); United States v. Miranda-Sotolongo, 827 F.3d 663 (7th Cir. 2016) (concluding, in part, report showing insurance not found in the database provided reasonable suspicion). We conclude that an "unconfirmed" or "not found" database response is sufficiently ambiguous to justify a brief investigatory traffic stop and is consistent with Supreme Court precedent allowing officers to detain an individual to resolve ambiguous conduct.  See Illinois v. Wardlow, 528 U.S. 119, 125 (2000).  Because Officer Stockwell had a reasonable and articulable suspicion to believe the vehicle may be uninsured, the traffic stop did not violate the Fourth Amendment.

Mitchell argues that the district court erred in finding reasonable suspicion without first assessing AOIVS's reliability and the officers' competency.  Mitchell might be correct, see Hanel, 993 F.3d at 544-45, but he failed to raise this issue before the district court and we, therefore, decline to address this argument on appeal.  See United States v. Pickens, 58 F.4th 983, 988 (8th Cir. 2023).

The judgment of the district court is affirmed.

KELLY, Circuit Judge, concurring in the judgment.

Respectfully, because the facts in Stephens are not sufficiently similar to those here, the case is of limited value in our analysis. True, in Stephens we affirmed the denial of a motion to suppress in part because the officer obtained information from a "computer check" that the license plate tags on the car Stephens was driving were "not on file." Stephens, 350 F.3d at 779. But before he ran that check, the officer already had spoken with a confidential informant who told him that Stephens—a convicted felon—"possessed two-to-three ounces of methamphetamine and a firearm." Id. And officers had identified Stephens and surveilled him as he entered

-4-

the car and drove away. Id. Then, after running the computer check, the officers learned that not only were Stephens's license plate tags "not on file," but his driver's license had expired about three years earlier. Id. Thus, at the time of the stop, Stephens's lack of driver's license alone provided probable cause—and not just for a traffic stop, but for an arrest. Id. at 780 (citations omitted). Because the only support for the traffic stop in this case is the "computer check" results, Stephens does not resolve the issue presented.

I agree that Hanel is instructive. In Hanel, the district court relied only on ambiguous database search results in denying a motion to suppress evidence seized as a result of a traffic stop. Hanel, 993 F.3d at 542–43. We affirmed, relying on the district court's factual findings, but we also cautioned:

> Our holding should not be interpreted as justifying all warrantless vehicle stops based on ambiguous results from data searches. Rather, we emphasize our holding depends on the express factual findings that: (1) the NCIC database was not inherently unreliable; (2) the officers were competent in the use of their laptop; and (3) the officers were competent in accessing the NCIC database.

Id. at 544–45. Here, we lack similar findings of facts. For example, there is no information about the reliability of the AOIVS database or about the officer's competency in accessing that database. Unlike in Hanel, we have only the "ambiguous results" from the search itself. And in my view, those results are insufficient to support a finding that the officer had reasonable suspicion to stop Mitchell's vehicle.

Nevertheless, I agree that the reliability of AOIVS is not properly before us. In its order, the district court noted that Mitchell did not argue that AOIVS was unreliable, and Mitchell did not contest that characterization, so we have no need to question it on appeal. For this reason, I concur in the judgment.

————————————————