# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-2700
_____

United States of America

*Plaintiff - Appellee*

v.

Darrick Vaughan

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Western District of Arkansas - Hot Springs
_____

Submitted: November 17, 2025
Filed: April 7, 2026
[Unpublished]
_____

Before BENTON, GRASZ, and STRAS, Circuit Judges.
_____

PER CURIAM.

Driving too slowly can draw attention. It did here, setting off a chain of events ending with the discovery of several kilograms of cocaine in an inventory search of Darrick Vaughan's rented SUV. Each step along the way was reasonable, so we affirm his conviction.

I.

A speeding Arkansas state trooper came up behind Vaughan in the left lane while he was going below the posted speed limit. Rather than pass him on the right, he pulled him over.

What started as an ordinary traffic stop turned into more. The trouble began when Vaughan gave the trooper a rental agreement for a different vehicle. Then a records check revealed that he had a revoked driver's license. With no one available who could legally drive the vehicle, the trooper decided to have it towed and impounded. But before the tow truck showed up, departmental policy required him to perform an inventory search, which uncovered 4.3 kilograms of cocaine.

Facing prosecution for possession with the intent to distribute the drugs, *see* 21 U.S.C. § 841(a)(1), (b)(1)(B)(ii)(II), Vaughan asked to have the evidence suppressed under the Fourth Amendment. After the district court[1] upheld the search, the jury found him guilty.

II.

The drugs were only admissible at trial if every step leading to their discovery was "reasonable." *United States v. Williams*, 39 F.4th 1034, 1041 (8th Cir. 2022) (citation omitted). We assess reasonableness de novo, except for the factual findings, which we review for clear error. *See id.*

A.

The traffic stop came first. What made it reasonable was the trooper's "objective[] . . . basis for believing," *id.* (citation omitted), that Vaughan had

---

[1]The Honorable Susan O. Hickey, then Chief Judge, now United States District Judge for the Western District of Arkansas.

violated an Arkansas statute requiring drivers to "obey" all "[o]fficial signs . . . directing slower-moving traffic to use a designated lane," Ark. Code Ann. § 27-51-302(2). Before the trooper stopped him, Vaughan had passed at least one that said, "SLOWER TRAFFIC KEEP RIGHT." Rather than switch lanes, however, he continued to drive under the speed limit in the *left* one. Perhaps not by much, but the district court credited the trooper's testimony that his speed was "below 70 miles an hour." *See Williams*, 39 F.4th at 1041–42 (describing "credibility determination[s] made by a district court after a hearing on . . . a motion to suppress" as "virtually unassailable on appeal" (citation omitted)). "[S]lower[]," in other words, than a reasonable officer might expect traffic to move on an uncongested highway in good weather, even at night. Ark. Code Ann. § 27-51-302(2).

Based on these "objective[]" facts, the trooper "*could* have reasonably believed" that Vaughan needed to keep right. *United States v. Sanders*, 196 F.3d 910, 913 (8th Cir. 1999) (emphasis added) (citation omitted). Even if the statute did not actually apply here, "the mistake . . . [would have been] an objectively reasonable one." *United States v. Smart*, 393 F.3d 767, 770–71 (8th Cir. 2005) (explaining that "[t]he possibility that there was no violation . . . does not mean that the initial suspicion was unreasonable").

It makes no difference that the trooper's actual mistakes were less reasonable. *See United States v. Hanel*, 993 F.3d 540, 544 (8th Cir. 2021) (upholding a traffic stop because it could have been based on an objectively reasonable mistake, even though the officers gave a different reason). He thought that Vaughan had broken the law but had trouble pinpointing why, first citing him for driving in the left lane without passing anyone and then claiming he had "impede[d] the flow of other traffic." Ark. Code Ann. § 27-51-301(b) (2020). As Vaughan points out, the former was legal at the time and the latter was a stretch, given that the only "*other* traffic" around to "impede[]" was the speeding trooper himself. *Id.* (emphasis added). The trooper may have "invoke[d] the wrong offense," but he still "ha[d] an objective basis to make [the stop]." *Hanel*, 993 F.3d at 544 (citation omitted); *see Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) ("[H]is subjective reason for making the arrest

need not be the criminal offense as to which the known facts provide probable cause.").

B.

The next step was deciding what to do with the SUV when it became clear that Vaughan could no longer drive it. With no one else around, the trooper made a reasonable call to have it towed and impounded. *See South Dakota v. Opperman*, 428 U.S. 364, 369 (1976) ("The authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge.").

Impoundment, after all, was "standard practice" under departmental policy in these circumstances. *See United States v. Morris*, 915 F.3d 552, 555 (8th Cir. 2019) (noting that "testimony can be sufficient to establish police impoundment procedures" (citation omitted)); *see also Colorado v. Bertine*, 479 U.S. 367, 375–76 (1987) (explaining that "standardized criteria" can make the decision reasonable). Leaving it on the side of the road would have posed "safety [and] traffic hazards." *See United States v. Betterton*, 417 F.3d 826, 830 (8th Cir. 2005) (recognizing that "an impoundment policy may allow some latitude and exercise of judgment" if the decision is still "based on legitimate concerns related to the purposes of an impoundment" (citation omitted)). The other possibility, letting Vaughan arrange a tow himself despite having incorrect rental paperwork and no proven connection to the vehicle, raised its own problems. *Cf. United States v. Long*, 906 F.3d 720, 724–25 (8th Cir. 2018) (holding that it was reasonable to have a rental car towed when the alternative was releasing it to someone who was not the renter and could not corroborate "his claim of permission to drive [it]"). At that point, impoundment became the only logical choice.

## C.

The final step was the inventory search, which ultimately led to the discovery of the drugs. It too was reasonable, despite the lack of a warrant, unless the trooper "fail[ed] to adhere to standardized procedures" and used it as "a pretext for an investigatory search." *United States v. Taylor*, 636 F.3d 461, 464–65 (8th Cir. 2011).

Under departmental policy, the decision to impound the vehicle required him to make a list of "[a]ll items of significant value" inside. The "valuable" items he included were a tire pump, floor jack, and battery charger. He lumped everything else together into categories like "clothes" and "cleaning supplies." (Capitalization omitted). Although Vaughan claims the inventory needed more detail, the trooper's testimony suggested that listing every item would have been, if anything, a *greater* departure from "the practice and procedure that [he had] been taught." *See Williams*, 39 F.4th at 1044 (relying on "uncontroverted testimony" describing "an inventory[-]search policy").

Adhering to the policy "remove[d] the inference" that the inventory search was "a ruse for general rummaging in order to discover incriminating evidence." *United States v. Nevatt*, 960 F.3d 1015, 1020 (8th Cir. 2020) (per curiam) (citations omitted). It does not matter if he began to suspect during the stop that Vaughan was "trafficking" drugs. With objectively reasonable reasons to impound the vehicle, including Vaughan's revoked license and incorrect rental paperwork, we cannot say that the trooper's "*sole purpose*" was "investigat[ing] a crime." *United States v. Nielsen*, 74 F.4th 572, 577 (8th Cir. 2023) (emphasis in original) (citations omitted). But he was free to "keep [his] eyes open for potentially incriminating items." *United States v. Harris*, 795 F.3d 820, 822 (8th Cir. 2015) (citation omitted).

## III.

We accordingly affirm the judgment of the district court.

_____